05-2141-cv, 05-2326-cv
Khulumani v. Barclay Nat'l Bank

UNITED STATES COURT OF APPEALS
FOR THE
SECOND CIRCUIT

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan States Courthouse, 500 Pearl Street, in the City of New York, on the 27ᵗʰ day of November, two thousand-seven,

**PRESENT**:   Hon. Robert A. Katzmann,
          Hon. Peter W. Hall,
                    *Circuit Judges;*
          Hon. Edward R. Korman\*,
                    *District Judge.*

# ORDER

Docket No.:  05-2141-cv, 05-2326-cv

x- - - - - - - - - - - - - - - - - -- - - - - - - - - - - - - - - - - - - -- - - - - - - - - - - - - - - - - - -- - - - x

SAKWE BALINTULO KHULUMANI, as personal representative of Saba Balintulo, FANEKAYA DABULA, as personal representative of Lungile Dabula, NOKITSIKAYE VIOLET DAKUSE, as personal representative of Tozi Skweyiya, BERLINA DUDA, as personal representative of Donald Duda, MARK FRANSCH, as personal representative of Anton Fransch, SHERIF MZWANDILE GEKISO, as personal representative of Ntombizodwa Annestina Nyongwana, ELSI GUGA, as personal representative of James Guga, JOYCE HLOPHE, as personal representative of Jeffrey Hlophe, NOMVULA EUNICE KAMA, as personal representative of Mncedisi Dlokova, JOYCE LEDWABA, as personal representative of Samuel Ledwaba, JOHANA LERUTLA, as personal representative of Matthews Lerutla, FRIEDA Z. LUKHULEI, as personal representative of Tokkie Lukhulei, ELIZABETH MAAKE, as personal representative of Jackson Maake, ARCHITON MADONDO, as personal representative of Mandla Madondo, BENJAMIN MAIFADI, TSHEMI MAKEDAMA, as personal representative of Lugile Makedama, MABEL MAKUPE, as personal representative of Andrew Makupe, MABEL MALOBOLA, as personal representative of Malobola Mbuso, EVELYN MATISO, as personal representative of Pitsi Matiso, BETTY MGIDI, as personal representative of Jeffrey Mgidi, ELIZABETH MKHONWANA, as personal representative of Obed Mkhonwana, CATHERINE MLANGENI, as personal representative of Bheki Mlangeni, CECIL MLANJENI, as personal representative of Kele Mlanjeni, SAMUEL MORUDU, as personal representative of Sannah P. Leslie, TSHIDISO MOTASI, as personal representative of John and Penelope Moloke, WILLIE NELANI, as personal representative of Mongezi Nelani, CATHERINE NGQULUNGA, as personal representative of Brian Ngqulunga, CATHERINE PHIRI, as personal representative of Thomas Phiri, ELIZABETH SEFOLO, as personal representative of Harold Sefolo, MARIA SIBAYA, as personal representative of Jeffrey Sibaya, PATRICIAL M. SONGO, as personal representative of Dipulo Songo, MPOLONTSI TYOTE, as personal representative of Boyboy Tyote, NOMKHANGO SKOLWENI DYANTYI, CLIFFORD ZIXELILE FUDUKILE, WINDOVOEL GAAJE, CHARLES HLATSHWAYO, MOSES HLONGWANE, LESIBA KEKANA, SANAKI MAHLATSHI, ROBERT MAKANA, ZAKHARIA FIKILE MAMBA, ELLIOT SITHEMBISO MARENENE, ALFRED MASEMOLA, MAUREEN THANDI MAZIBUKO, MICHAEL MBELE, LAETITIA NOMBAMBO MFECANE, as personal representative of Rubin Mfecane, DENNIS MLANDELI, TEFO MOFOKENG,

_____

\*The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

MOTLALETSATSI MOLATEDI, AZARIEL MOLEBELELI, SIMON MOLOTSI, LINA MOREANE, as personal representative of Albert Xaba, THABISO SAMUEL MOTSIE, SONTO NDLOVU, MANGINDIVA ROBERT RHENENE, THOBILE SIKANI, BUBELE STEFANE, NOLUTHANDO BILETILE, LESLIE MNCEDISI BOTYA, LEON DUKASCHE, ELSIE GISHI, DORTHIA GOMO-PEFILE, ZAMIKHAYA BISHOP KHALI, JAMES MAGABANA, NOSIPHO MANQUBA, NOTATHU EUGENIA MATOMELA, NOMISA THERSIA MAY, MBONGENI NELSON MBESHU, MZUHLANGENA NAMA, ELIAS NGAMANI, as personal representative of Elizabeth Nagamani, GESHIA NGOXZA, LUCAS NDUKWAYIBUZWA NGWENYANA, WELLINTON MTYUKATO NKOSIPHENDULE, VUYANI NONGCAMA, SINDISWA MIRRIAM NUNU, THULANI NUNU, BONIWE PHALAZA, PATHISWA PRINGANE, as personal representative of Mthozama Theophilus Pringane, MTHUTUZELI SIKANI, NOLUTHANDO SILETILE, THEMBEKA VICTORIA SIPHAHO, JOHANNES TITUS, MPOLONTSI TYOTES, MTHUZIMELE MEFORD YAMILE, NTUNANI WILLIAM ZENANI, THANDIWE SHEZI, ELIAS B. BONENG, DENNIS VINCENT FREDERICK BRUTUS, MORALOKI A. KGOBE, REUBEN MPHELA, LULAMILE RALRALA,

*Plaintiffs-Appellants*,

v.

BARCLAY NATIONAL BANK LTD., BRITISH PETROLEUM, PLC, CHEVRONTEXACO CORPORATION, CHEVRONTEXACO GLOBAL ENERGY, INC., CITIGROUP, INC., COMMERZBANK, CREDIT SUISSE GROUP, DAIMLERCHRYSLER AG, DEUTSCHE BANK AG, DRESDNER BANK AG, EXXONMOBIL CORPORATION, FORD MOTOR COMPANY, FUJITSU, LTD., GENERAL MOTORS CORPORATIONS, INTERNATIONAL BUSINESS MACHINES CORP., J.P. MORGAN CHASE, SHELL OIL COMPANY, and UBS AG,

*Defendants-Appellees*,

AEG DAIMLER-BENZ INDUSTRIE, FLUOR CORPORATION, RHEINMETALL GROUP AG, RIO TINTO GROUP, TOTAL-FINA-ELF and DOE CORPORATIONS,

*Defendants*.

x- - - - - - -  - - - - - - - - - - -- - - - - - - - - - - - - - - - - - -- - -- - - - - - - - - - - - - -- - - - x
LUNGISILE NTSEBEZA, HERMINA DIGWAMAJE, ANDILE MFINGWANA, F.J. DLEVU, LWAZI PUMELELA KUBUKELI, FRANK BROWN, SYLVIA BROWN, NYAMEKA

2

GONIWE, SIGQIBO MPENDULO, DOROTHY MOLEFI, THEMBA MEQUBELA, LOBISA IRENE DIGWAMAJE, KAELO DIGWAMAJE, LINDIWE PETUNIA LEINANA, MATSHIDISO SYLVIA LEINANA, KELEBOGILE PRUDENCE LEINANA, DAVID MOTSUMI, SARAH NKADIMENG, MOEKETSI THEJANE, MOSHOESHOE THEJANE, PASCALINAH BOOKIE PHOOFOLO, KHOBOTLE PHOOFOLO, GLADYS MOKGORO, JONGANI HUTCHINGSON, SEFUBA SIDZUMO, GOBUSAMANG LAURENCE LEBOTSO, EDWARD THAPELO TSHIMAKO, RAHABA MOKGOTHU, JONATHAN MAKHUDU LEDIGA, ANNA LEBESE, SIPHO STANLEY LEBESE, WILLIAM NBOBENI, JOHN LUCAS NGOBENI, CLEMENT HLONGWANE and MASEGALE MONNAPULA,

*Plaintiffs-Appellants*,

SAKWE BALINTULO KHULUMANI, P.J. OLAYI, WELLINGTON BANINZI GAMAGU, Violations of Pass Laws, unlawful detention 1981-1983, torture subjected to discriminatory labor practices 1981 and WILLIAM H. DURHAM,

*Plaintiffs*,

v.

DAIMLER CHRYSLER CORPORATION, NATIONAL WESTMINSTER BANK PLC, COLGATE PALMOLIVE, BARCLAYS BANK PLC, UBS AG, CITIGROUP INC., DEUTSCHE BANK AG, DRESDNER BANK AG, COMMERZBANK AG, FORD MOTOR COMPANY, HOLCIM, INC., EXXON MOBIL CORPORATION, SHELL OIL COMPANY, J.P. MORGAN, MINNESOTA MINING AND MANUFACTURING CO. (3M CO.), GENERAL ELECTRIC COMPANY, BRISTOL-MEYERS SQUIBB CO., E.I. DUPONT DE NEMOURS, XEROX CORPORATION, IBM, GENERAL MOTORS, HONEYWELL INTERNATIONAL, INC., BANK OF AMERICA, N.A., THE DOW CHEMICAL COMPANY, COCA-COLA CO., CREDIT AGRICOLE S.A., HEWLETT-PACKARD COMPANY, EMS-CHEMIE (NORTH AMERICA) INC., CHEVRON TEXACO CORPORATION, AMERICAN ISUZU MOTORS, INC. and NESTLE USA, INC.,

*Defendants-Appellees*,

SULZER AG, SCHINDLER HOLDING AG, ANGLO-AMERICAN CORPORATION, DEBEERS CORPORATION, NOVARTIS AG, BANQUE INDO SUEZ, CREDIT LYONNAIS, and Unknown officers and directors of DANU INTERNATIONAL, STANDARD CHARTERED, P.L.C., CORPORATE DOES, CREDIT SUISSE GROUP, CITIGROUP AG, SECURITIES INC., as successor to Morgan Guaranty, MANUFACTURERS HANNOVER, CHEMICAL BANK & CHASE MANHATTAN BANK, UNISYS CORPORATION, SPERRY CORPORATION, BURROUGHS CORPORATION, ICL, LTD., AMDAHL CORP., Computer Companies, JOHN DOE CORPORATION, HOLCIN, LTD., HENRY BLODGET, JUSTIN BALDAUF, KRISTEN CAMPBELL, VIRGINIA SYER GENEREUX, SOFIA GHACHEM, THOMAS MAZZUCCO, EDWARD McCABE, DEEPAK RAJ, JOHN 1-10 DOE, OERLIKON CONTRAVES AG, OERLIKON BUHRLE AG, CORPORATE DOES 1-100, ROYAL DUTCH

3

PETROLEUM CO., SHELL TRANSPORT & TRADING COMPANY PLC and SHELL PETROLEUM, INC., MERRILL LYNCH & CO. INC., KENNETH SEYMOUR,

*Defendants*.

x- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

By opinion dated October 12, 2007, we vacated the district court's dismissal of the Plaintiffs' claims under the Alien Tort Claims Act and remanded to the district court for further proceedings. Pursuant to Rule 41 of the Federal Rules of Appellate Procedure, Defendants-Appellees, thirty-six domestic and foreign corporations (hereinafter "the Corporations"), have moved this Court to stay issuance of the mandate in this action, pending their petition for certiorari to the Supreme Court.[1] By order dated November 9, 2007, we DENIED the motion by majority vote of the panel. We write to explain the basis for our decision; Judge Korman, dissenting from the denial, writes separately. To grant a stay at this juncture would deprive the district court of the opportunity to address the principal issue upon which the Corporations seek Supreme Court review: whether various prudential doctrines, including case-specific deference to the political branches, counsel dismissal of these claims. We expressly did not decide this issue on the present record and remanded to the district court for a determination in the first instance.

Rule 41 requires the party seeking a stay of the mandate to show that "the certiorari petition would present a substantial question and that there is good cause for a stay." Fed. R. App. P. 41(d)(2)(A). Even if the movant makes the required showing, our decision to grant the stay is a matter of discretion. 20A Moore's Federal Practice § 341.14 (3d ed. 1997) (citing *United States v. Holland*, 1 F.3d 454, 456 (7th Cir. 1993)). This Court has not ruled adversely to the Corporations on the issues of case-specific deference or the political question doctrine. Notwithstanding the absence of such a ruling, the Corporations argue, in attempt to show good cause, that "the maintenance of these actions . . . is an affront to South Africa's sovereignty, an irritant to U.S. foreign relations with that country and others, and a disincentive to future multinational corporate investment in developing economies." Mot. to Stay at 11-12.

The critical weakness in the Corporations' motion is its premise that this issue has been sufficiently developed as to be fit for review by the Supreme Court. Contrary to the Corporations' suggestion, "the district court explicitly refrained from addressing the defendants' arguments that the ATCA claim presented a non-justiciable political question." *Khulumani v. Barclay Nat'l Bank Ltd.*, Nos. 05-2141-cv, 05-2326-cv, slip op. at 12 (2d Cir. Oct. 12, 2007) (per curiam); *see also In re S. African Apartheid Litig.*, 346 F. Supp. 2d 538, 543 n.4 (S.D.N.Y. 2004) ("Defendants also argue that there is no case or controversy for this Court to hear under Article III of the Constitution . . . because the matter is a non-justiciable political question. . . . Given the Court's finding that defendants are entitled to relief on other grounds, the Court need not address

---

[1] We note that the Corporations did not petition for a panel rehearing or rehearing en banc.

these remaining grounds for defendants' motion.").[2] Accordingly, we did not address the applicability of case-specific deference or other prudential doctrines because such questions require the type of careful case-by-case analysis to which district courts are better suited in the first instance. *See Kadic v. Karadzic*, 70 F.3d 232, 249 (2d Cir. 1995). We also note that it has been several years since this issue has been briefed, and the parties should be able to develop the record to take into account intervening developments. For these same reasons, we consider the Corporations' application for Supreme Court review to be premature. And in the absence of an adverse ruling on the issue of case-specific deference or other prudential doctrines, the Corporations' claim that they have demonstrated a likelihood of irreparable injury without a stay is unpersuasive.

We expect that the district court on remand will rule expeditiously; at that point, the parties can decide whether, and on what grounds, to pursue further appeals. Should the parties pursue further appeals, we (and, if necessary, the Supreme Court) will have the benefit of a fully developed foundation upon which to proceed. For the foregoing reasons, the motion is DENIED.

KORMAN, District Judge, dissenting:

I assume familiarity with the background of this case in which the defendants have moved to stay the mandate for ninety days so that they may file a petition for a writ of certiorari. While the plaintiffs have declined to consent to the motion, they have made no showing of prejudice that would result from staying the mandate. Nevertheless, the majority has voted to deny the application. I write to explain my reasons for dissenting from that denial.

(1)

Under Fed. R. App. P. 41(d)(2)(A), a motion to stay the mandate pending a petition for a writ of certiorari "must show that the certiorari petition would present a substantial question and that there is good cause for a stay." This case involves substantial issues regarding the application of the ATCA of the kind that arise with increasing frequency. Indeed, this was the reason the Supreme Court gave for granting certiorari in *Sosa v. Alvarez-Machain*, 542 U.S. 692, 699 (2004). More significantly, this case "implicates considerations of foreign policy . . . threatened by the [panel's] decision" that "weigh[] in favor of a stay." *See Wald v. Regan*, 708 F.2d 794, 803 (1st Cir. 1983) (Breyer, *J.*).[3] Indeed, in *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398 (1964), the Supreme

---

[2] Nor has the district court had the opportunity to address the competing views on this issue. *Compare* Brief for the United States of America as Amicus Curiae, Brief for South Africa as Amicus Curiae, *and* Media Statement of Minister for Justice and Constitutional Development Brigitte Mabandla (Oct. 19, 2007), *with* Brief for South African Organizations, Unions and Political Parties *and* Brief for Commissioners and Committee Members of South Africa's Truth and Reconciliation Commission as Amici Curiae (including the views of Archbishop Desmond Tutu).

[3] While the Court of Appeals in *Wald* ultimately denied the application to stay the mandate based on its assessment that the Supreme Court was unlikely to reverse, the Supreme

Court explained that it had "granted certiorari because the issues involved bear importantly on the conduct of the country's foreign relations and more particularly on the proper role of the Judicial Branch . . . ." *Id.* at 407.

This accurately describes the threshold issue in this case as to which the real party in interest is the Republic of South Africa. Specifically, invoking the doctrine of international comity, it asked the district court to dismiss the case, and it asked us to apply the same doctrine to affirm the dismissal by the district court judge. The Executive Branch joined in that application because of the foreign policy implications that the rejection of South Africa's plea would have on our relations with that country as well as those of "[v]arious foreign governments, including the United Kingdom and Canada, which have also approached us via diplomatic channels to express their profound concern that their banks, corporations and other entities have been named as defendants", A. 01090-9, and their "strong belief that the issues raised in the litigation are most appropriately handled through South Africa's domestic process." *Id.*

Under these circumstances, the defendants are acting as surrogates for the Republic of South Africa in petitioning for certiorari and seeking a stay of the mandate. Indeed, after the majority reversed the judgment dismissing the complaint, the Republic of South Africa, speaking through its Minister of Justice, issued a statement reiterating its "view that the case is directly related to the sovereignty of the South African state and should be resolved through South Africa's own democratic process." Ministry of Justice and Constitutional Development Republic of South Africa, Media Statement: Apartheid Lawsuit – US court of appeal decision (Oct. 19, 2007).

Thus, the issue that the Supreme Court will be asked to consider is the plea of the Republic of South Africa that the Judicial Branch of the United States not meddle in its affairs by entertaining complaints in which the United States does not have any interest – a position supported by a number of scholars, including some of the most committed human rights advocates. *See, e.g.*, Beth Stephens, Sosa v. Alvarez-Machain*, "The Door Is Still Ajar" for Human Rights Litigation in U.S. Courts*, 70 Brook. L. Rev. 533, 562 (2005). Because "the issues involved bear importantly on the conduct of the country's foreign relations and more particularly on the role of the Judicial Branch", *Sabbatino*, 376 U.S. at 407, "the certiorari petition would present a substantial federal question." Fed. R. App. P. 41(d)(2)(A).

More than that, this is a case in which the Supreme Court has already indicated a special interest. In what can only be described as an extraordinary discussion of this case, the Supreme Court provided guidance with respect to how South Africa's plea should be considered in its *Sosa* opinion. Thus, after formulating the doctrine of case-specific deference out of concern that "many attempts by federal courts to craft remedies for the violation of new norms of international law would raise risks of adverse foreign policy consequences," *Sosa*, 542 U.S. at 727-28, the Supreme Court turned to the present case:

> For example, there are now pending in Federal District Court several class actions
> seeking damages from various corporations alleged to have participated in, or

---

Court granted certiorari and reversed on the merits. *See Wald v. Regan*, 468 U.S. 222 (1984).

abetted, the regime of apartheid that formerly controlled South Africa. *See In re South African Apartheid Litigation*, 238 F. Supp. 2d 1379 (JPML 2002) (granting a motion to transfer the cases to the Southern District of New York). The Government of South Africa has said that these cases interfere with the policy embodied by its Truth and Reconciliation Commission, which "deliberately avoided a 'victors' justice' approach to the crimes of apartheid and chose instead one based on confession and absolution, informed by the principles of reconciliation, reconstruction, reparation and goodwill." Declaration of Penuell Mpapa Maduna, Minister of Justice and Constitutional Development, Republic of South Africa, reprinted in App. to Brief for Government of Commonwealth of Australia et al. as *Amici Curiae* 7a, ¶ 3.2.1 (emphasis deleted). The United States has agreed. *See* Letter of William H. Taft IV, Legal Adviser, Dept. of State, to Shannen W. Coffin, Deputy Asst. Atty. Gen., Oct. 27, 2003, reprinted in *id.*, at 2a. *In such cases, there is a strong argument that federal courts should give serious weight to the Executive Branch's view of the case's impact on foreign policy.*

*Id.* at 733 n.21 (emphasis added) (citation omitted). The majority here brushed off this advice, saying that it "views summary dismissal at the behest of a footnote premature." *Khulumani v. Barclay Nat'l Bank Ltd.*, Nos. 05-2141, 05-2326, slip op. at 9110 (2d Cir. Oct. 12, 2007). Nevertheless, the discussion of this case in *Sosa* provides additional support for the argument that certiorari may be granted. Moreover, the absence of any compelling reason for rejecting the plea of the Republic of South Africa, suggests that if certiorari is granted, the judgment may be reversed. Indeed, a tally of the seventy-five cases, in which the Supreme Court published Slip Opinions, *Per Curiams*, and Original Case Decrees in the 2006-2007 term, indicated that over two-thirds, fifty-two precisely, were either reversed or vacated.

This case not only presents a "substantial question", but there is also "good cause" to stay the mandate. *See* Fed. R. App. P. 41(d)(2)(A). The continued prosecution of this matter constitutes a continuing insult to the Republic of South Africa and a continuing irritant to our relationship with that post-apartheid government. More significantly, as previously noted, on this issue, the Republic of South Africa is the aggrieved party and the real party in interest. The remand will only cause it more harm by enmeshing it in the litigation. Indeed, one footnote in the *per curiam* opinion specifically refers to the failure of the district court judge to decide the plaintiffs' motion to strike the Statement of Judgment filed on behalf of the Republic of South Africa by its Minister of Justice, *Khulumani v. Barclay Nat'l Bank Ltd.*, slip op. at 9105 n.3. This otherwise pointless observation suggests that the Republic of South Africa could be forced into an evidentiary hearing to defend the validity of its objection. Indeed, in its opinion denying the motion to stay the mandate, the majority observes that the district court has not

> had the opportunity to address the competing views on this issue. *Compare* Brief for the United States of America as Amicus Curiae, Brief for South Africa as Amicus Curiae, *and* Media Statement of Minister for Justice and Constitutional Development Brigitte Mabandla (Oct. 19, 2007), *with* Brief for South African Organizations, Unions and Political Parties *and* Brief for [the former] Commissioners and Committee Members of South Africa's Truth and Reconciliation Commission as

7

Amici Curiae (including the views of Archbishop Desmond Tutu).

Majority Op. *ante* at 5 n.2. The latter *amicus* brief argues that, contrary to the position of the South African government, the current litigation "does not conflict in any manner with the policies of the South African government, or the goals of the South African people, as embodied in the TRC." TRC Br. at 2.[4] But it is only for the South African government, through its elected representatives, to say whether this litigation conflicts with its policies, just as it earlier decided for the same reasons to reject the Truth and Reconciliation Commission's recommendation that a once-off wealth tax be imposed on all corporations. Surely this is not a dispute for a United States district judge to resolve. *See Bi v. Union Carbide Chems. & Plastics Co.*, 984 F.2d 582, 586 (2d Cir. 1993) (Newman, *J.*). Yet, the majority contemplates a remand that would subject a foreign democratic nation to the indignity of having to defend policy judgments that have been entrusted to it by a free people against an attack by private citizens and organizations who have lost the political battle at home. This dispute is not the business of the Judicial Branch of the United States. A stay is warranted to allow the Supreme Court to determine whether to permit such a proceeding to go forward.

(2)

The majority justifies the denial of the stay of the mandate on the grounds that one of the issues the defendants identified in their motion – the issue of case-specific deference – has not "been sufficiently developed to be fit for review by the Supreme Court." Majority Op. *ante* at 4. This defect is said to result from the fact that "the district court explicitly refrained from addressing this issue" and the majority's consequent failure to "address the applicability of case-specific deference . . . ." *Id.*

Passing over the accuracy of the majority's description of the district court's opinion, the defect asserted by the majority is not an impediment sufficient to deny a stay of the mandate for a number of reasons. The "traditional rule," as the Supreme Court has observed, "precludes a grant of certiorari only when the question presented was not pressed or passed upon below." *United States v. Williams*, 504 U.S. 36, 41 (1992) (Scalia, *J.*) (internal quotation marks omitted). This "rule operates (as it is phrased) in the disjunctive . . . ." *Id.* Thus it permits review where an issue was passed upon below, even though not argued, and where the issue was argued and not passed upon. Indeed, the Supreme Court is authorized to grant certiorari before judgment by the Court of Appeals. 28 U.S.C. § 1254(1); *see, e.g., Mistretta v. United States,* 488 U.S. 361 (1989). While such discretionary review is unusual, the Supreme Court has considered issues not resolved by the Court of Appeals that "raise only [an] issue[] of law not calling for examination [and] appraisal of evidence . . . ." *Kiefer - Stewart Co. v. Joseph E. Seagram & Sons*, 340 U.S. 211, 214 (1951). Indeed, it has exercised its discretion to consider an issue that had not been raised below and that it raised *sua sponte. See Sibbach v. Wilson & Co.*, 312 U.S. 1, 16 (1941). Whether the Supreme Court will deny certiorari and allow this case to go forward, simply because two of the three members of the panel declined to reach the issue, will ultimately depend on its assessment of the importance of the issue

---

[4] The *amicus* brief of the South African Organizations, Unions and Political Parties simply contains a brief expression of support for the *amicus* brief filed by the former Commissioners of the TRC.

and the consequences of permitting the kind of proceeding the majority envisions to go forward. *See Youakim v. Miller*, 425 U.S. 231, 234 (1976).

In sum, the unjustified refusal of the majority to address the issue of case-specific deference is not a basis to deny the motion to stay the mandate. On the contrary, this case raises an additional issue, namely, whether it was proper for a majority of the panel to decline to reach the issue. In my separate opinion, I addressed the significant considerations of policy that warrant reaching the issue of case-specific jurisdiction, even if it had not been decided by the district court. More significantly, I demonstrated that the majority was compelled to reach the issue because it involved the subject-matter jurisdiction of the district court. This argument turned on the jurisdiction-conferring language of the ATCA, the manner in which it had been construed in *Sosa*, and our own pre-*Sosa* precedent, beginning with *Filartiga v. Pena-Irala*, 630 F.2d 876, 887-88 (2d Cir. 1980). *See Khulumani v. Barclay Nat'l Bank Ltd.*, slip op. at 9203-08. The *per curiam* opinion offered no response to this argument, and its refusal to reach the issue at the threshold is itself worthy of certiorari.

(3)

I have passed over the issue of whether the *per curiam* opinion accurately described the manner in which the district judge addressed the issue of case-specific jurisdiction. The majority repeats the assertion made in the *per curiam* opinion that "the district court explicitly refrained from addressing the defendants' arguments that the ATCA claim presented a non-justiciable-political question," *ante* at 4 (quoting *Khulumani v. Barclay Nat'l Bank Ltd.*, slip op. at 12 (*per curiam*)). This assertion, which implies that the district court judge was referring to the issue of case-specific jurisdiction, is predicated on footnote 4 of the district court opinion. *See In re South Africa Apartheid Litig.,* 346 F. Supp. 2d at 543 n.4 (parenthetical omitted). The footnote reads as follows:

> Defendants also argue that there is no case or controversy for this Court to hear under Article III of the Constitution . . . because the matter is a non-justiciable political question. *See Memorandum of Law in Support of Defendants' Joint Motion to Dismiss at 3-4.* Given the Court's finding that defendants are entitled to relief on other grounds, the Court need not address these remaining grounds for defendants' motion.

*Id.* (emphasis added). The italicized reference to the source of the defendants' argument is deleted from the quotation that appears in the majority opinion here and in the *per curiam* opinion. *Khulumani v. Barclay Nat'l Bank Ltd.*, slip op. at 9111-12. This omission is not without purpose.

The Memorandum of Law in Support of the Defendants' Joint Motion to Dismiss ("Joint Motion"), which Judge Sprizzo expressly referenced in the part of his opinion declining to address the issue, argued (in relevant part) that the "adjudication of plaintiffs' claim would require a court to pass on the merits of political questions that were resolved by the executive and legislative branches of the United States government in favor of commerce with South Africa." Joint Motion

9

at 3.  It did not address the issue of case-specific deference.  Indeed, the defendants' motion predated the State Department's Statement of Interest and was filed a year before *Sosa* was decided.

When the defendants subsequently raised the argument, Judge Sprizzo did not "explicitly refrain" from addressing it.  On the contrary, he spoke to it directly.  Specifically, he observed that, "even though the *Sosa* decision did not deliver the definitive guidance . . . that some had come to expect, nevertheless it does dispose of the issues raised by these motions."  *In re South Africa Apartheid Litig.*, 346 F. Supp. 2d at 547.  Judge Sprizzo then reviewed each of the considerations that he understood *Sosa* required "courts to consider in determining whether conduct should be found to be encompassed by the ATCA."  *Id.*  One such consideration was that "courts must consider the foreign relations consequences of finding that conduct is encompassed by the ATCA, since entertaining such suits can impinge on the discretion of the legislative and executive branches of this country as well as those of other nations."  *Id.* at 548 (citing *Sosa*, 542 U.S. at 733 n.21).  Speaking to the issue of recognizing a cause of action for aiding-and-abetting a violation of a norm of customary international law, he alluded generally to "the collateral consequences and possible foreign relations repercussions that would result from allowing courts in this country to hear civil suits for the aiding-and-abetting of violations of international norms around the globe."  *Id.* at 551.  "To do so," he held, "would not be consistent with the 'restrained conception' of new international law violations that the Supreme Court has mandated for the lower federal courts."  *Id.*  Of particular relevance is the following detailed discussion of this consideration, as applied to the specific facts of this case:

> [A]s *Sosa* points out, this Court must be aware of the collateral consequences that would result from finding a new international law violation that would support ATCA jurisdiction.  In this case, those consequences are not only far-reaching but would raise the prospect of serious impediments to the flow of international commerce.  Indeed, the South African government has indicated that it does not support this litigation and that it believes that allowing this action to proceed would preempt the ability of the government to handle domestic matters and would discourage needed investment in the South African economy.  *See* Declaration of Minister Penuell Mpapa Maduna, dated July 11, 2003 at ¶¶ 10, 12.  Similarly, the United States government has expressed its belief that the adjudication of this suit would cause tension between the United States and South Africa and would serve to hamper the policy of encouraging positive change in developing countries via economic investment.  *See* Statement of Interest of the United States, dated October 30, 2003.  As the *Sosa* Court made clear, these opinions as to the foreign relations consequences of this action certainly deserve great weight.  *See Sosa*, 124 S.Ct. at 2766 n.21 (mentioning this case specifically and stating that "in such cases, there is a strong argument that federal courts should give serious weight to the Executive Branch's view of the case's impact on foreign policy").

10

*Id.* at 553-54. The advice provided by *Sosa* on the issue of case-specific deference was clearly one of the considerations underlying Judge Sprizzo's opinion.

(4)

While I have focused on the case-specific deference/international comity issue because it alone justifies a stay of the mandate, that issue is not the only one defendants intend to raise in their certiorari petition. They also intend to argue that "[t]he court's recognition of claims for aiding and abetting violations of international law is inconsistent with *Sosa*." Mot. to Stay the Mandate at 4. This claim has particular force because it necessarily includes the following issues addressed extensively in my separate opinion: (1) whether customary international law provides a basis for imposing liability on corporate entities[5]; (2) whether the standard for imposing such liability (that Judge Katzmann and I agree upon), which did not emerge until after the defendants engaged in the conduct alleged in the complaints, may be applied retroactively; and, (3) whether allowing causes of action, alleging a violation of the customary international law norm of genocide, which Congress expressly indicated its intent to proscribe, is an abuse of our discretion, *see Khulumani v. Barclay Nat'l Bank Ltd.*, slip op. at 9228-30.[6] These are substantial issues warranting a stay of the mandate.

Conclusion

In sum, an arbitrary refusal by two members of a panel of the Court of Appeals to avoid reaching an issue does not insulate the issue from Supreme Court review, nor does it insulate from review the propriety of its refusal to address the issue. I have learned from Judge Breyer's experience in *Wald v. Regan*, 708 F.2d 794, 803 (1st Cir. 1983), *rev'd*, 468 U.S. 222 (1984), the dangers of predicting the outcome of proceedings in the Supreme Court. I suggest, however, that this case is worthy of certiorari and that there are no compelling reasons for denying the motion to stay the mandate. On the contrary, the prejudice to the Republic of South Africa and to our relationship with that post-apartheid democracy counsel against permitting the proceedings the majority envisions on remand from going forward.

While I vote to grant the motion to stay the mandate, I add these words of concern regarding the apparent intention of the defendants to take the full ninety days they have to file a petition for a writ of certiorari. The filing of a petition in early to mid-December would make it possible for the

---

[5] Because this goes to the issue of subject-matter jurisdiction, the fact that it was not argued by the defendants is not material. *See Kontrick v. Ryan*, 540 U.S. 443, 455 (2004) ("A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance.").

[6] The majority declined to reach this issue, although at least one member of the majority recognized that the issue was an open one. *See Khulumani v. Barclay Nat'l Bank Ltd.*, slip op. at 9154 n.18 (Op. of Judge Katzmann). Because it goes to the issue of subject-matter jurisdiction, the majority did not have the discretion to pass on it. *See Kontrick*, 540 U.S. at 455.

11

Supreme Court to decide the case in its current term, should it grant the petition. Delaying the filing of the petition until mid-January makes that impossible and could delay the disposition until 2009. The defendants are represented by some of the nation's leading law firms, including a firm with one of the most highly-regarded Supreme Court practices in the nation. There is no reason why they should not be able to file the petition promptly. The prejudice of the delay is not to the plaintiffs, but to the Republic of South Africa.

Accordingly, for the foregoing reasons, I vote to grant the motion to stay the mandate. Although the majority has voted to deny the motion to stay the mandate, the district court judge has discretion to await the outcome of the proceedings in the Supreme Court, just as we sometimes do before deciding a case involving an issue that the Supreme Court is hearing or has agreed to hear.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK OF COURT


By: _____
Richard Alcantara, Deputy Clerk