**Ken WIWA, et al., Plaintiffs,**

v.

**ROYAL DUTCH PETROLEUM CO., et al., Defendants.**

**Ken Wiwa, et al., Plaintiffs,**

v.

**Brian Anderson, Defendant.**

**Nos. 96 Civ. 8386 (KMW) (HBP), 01 Civ. 1909 (KMW) (HBP).**

United States District Court, S.D. New York.

April 23, 2009.

Abby Lynn Rubinson, Earthrights International, Brooklyn, NY, Jennifer M. Green, Maria Couri Lahood, Jonathan Gaynor Kaufman, Earthrights International, New York, NY, Marco Benjamin Simons, Earthrights International, Washington, DC, Judith Brown Chomsky, Law Office of Judith Brown Chomsky, Elkins

Park, PA, Paul L. Hoffman, Schonbrun Desimone Seplow Harris & Hoffman LLP, Venice, CA, Richard Herz, Earthrights International, West Hartford, CT, for Plaintiffs.

Agnieszka Maria Fryszman, Cohen, Milst4ein, Hausfeld & Toll, P.L.L.C., Washington, DC, for Plaintiffs/Defendants.

Rory O. Millson, Michael T. Reynolds, Thomas G. Rafferty, Cravath, Swaine & Moore LLP, New York, NY, for Defendants.

## ORDER

KIMBA M. WOOD, District Judge.

Defendants Shell Petroleum, N.V.; Shell Transport and Trading Co., Ltd.; and Brian Anderson ("Defendants") in *Wiwa v. Royal Dutch Petroleum Co.*, 96 Civ. 8386, and *Wiwa v. Brian Anderson*, 01 Civ.1909 (collectively, *"Wiwa"* ) move, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss for lack of subject matter jurisdiction the claims brought by the *Wiwa* plaintiffs ("Plaintiffs") under the Alien Tort Statute (the "ATS"), 28 U.S.C. § 1350 (Plaintiffs' "ATS claims"). (96 Civ. 8386 D.E. ("96–D.E.") 330.)

For the reasons stated below, the Court DENIES in part and GRANTS in part Defendants' motion.

### BACKGROUND

The substance of Plaintiffs' claims and allegations are addressed in detail in the Court's prior orders, familiarity with which is assumed. Here, the Court provides a summary of the parties' arguments by way of background.

Plaintiffs' ATS claims seek to hold Defendants *vicariously* liable for violations of customary international law ("CIL") committed against Plaintiffs by the Nigerian military government.[1] As discussed below, at Discussion part IV, Plaintiffs may also contend that defendant Brian Anderson ("Anderson") is *directly* liable for violating norms of CIL ("CIL norms").

Defendants argue that the Court lacks subject matter jurisdiction over Plaintiffs' ATS claims for four separate reasons (1) Plaintiffs have failed to establish that their ATS claims plead violations of sufficiently universal, specific, and mutual CIL norms to give rise to the Court's subject matter jurisdiction; (2) the ATS does not grant courts jurisdiction to hear claims that rely on some or all of Plaintiffs' vicarious-liability theories; (3) to the extent that Plaintiffs' ATS claims seek to hold Anderson directly liable, Plaintiffs have failed to establish facts sufficient to justify the Court's subject matter jurisdiction over Plaintiffs' ATS claims against Anderson; and (4) the Court lacks jurisdiction over the ATS claims of plaintiff Blessing Kpuinen ("Kpuinen") because, in 2004, she became a citizen of the United States.[2]

Plaintiffs respond by arguing (1) that all of Plaintiffs' ATS claims are based on sufficiently universal, specific, and mutual CIL norms to survive Defendants' motion; (2) that, in order to establish the Court's subject matter jurisdiction over Plaintiffs' ATS claims, Plaintiffs need demonstrate only that the Nigerian government's tortious conduct *directly* violated these CIL norms, and need not demonstrate that Plaintiffs can hold Defendants *vicariously* liable for that tortious conduct; (3) that Plaintiffs have provided sufficient facts to

---

1. Plaintiffs rely on numerous theories of secondary and vicarious liability, including aiding and abetting, principal-agent, conspiracy, and joint participation. For simplicity's sake, the Court here refers to all these types of liability as "vicarious liability."

2. Defendants move to dismiss Plaintiffs' ATS claims for reasons beyond those stated here. However, as explained below, the Court concludes that it need address only these four arguments in order to resolve Defendants' motion.

establish the Court's jurisdiction over Plaintiffs' ATS claims against Anderson; and (4) that Kpuinen's recent change in citizenship does not defeat the Court's jurisdiction over her ATS claims.

The Court concludes that (1) all but one of Plaintiffs ATS claims are based on sufficiently universal, specific, and mutual CIL norms to give rise to an ATS claim; (2) as long as Plaintiffs establish that the Nigerian government's tortious conduct violated these CIL norms, the Court has subject matter jurisdiction over Plaintiffs' ATS claims; (3) Plaintiffs' ATS claims against Anderson survive this motion to dismiss; and (4) the Court has jurisdiction to hear Kpuinen's ATS claims.

## DISCUSSION

### I. Legal Standard

■ The ATS "confers federal subject-matter jurisdiction when the following three conditions are satisfied: (1) an alien sues (2) for a tort (3) committed in violation of the law of nations" (respectively, the "first," "second," and "third" "ATS condition"). *Kadic v. Karadzic*, 70 F.3d 232, 238 (2d Cir.1996). Primarily at issue in this order is whether Plaintiffs' ATS claims are based on a violation of the law of nations and thus meet the third ATS condition.

### A. Sources of the Law of Nations

The law of nations arises from CIL or from binding international agreement. Restatement (Third) of Foreign Relations Law of the United States § 102(1) (1987) ("Restatement"). Here, Plaintiffs' ATS claims are based on violations of CIL norms.

Courts examine the following sources, listed in Article 38 of the Statute of the International Court of Justice ("ICJ Statute"), to determine the existence and substance of a CIL norm

(a) international conventions, whether general or particular, establishing rules

expressly recognized by the contesting states;

(b) international custom, as evidence of a general practice accepted as law;

(c) the general principles of law recognized by civilized nations;

(d) . . . judicial decisions and the teachings of the most highly qualified publicists of the various nations, as subsidiary means for the determination of rules of law.

*Abdullahi*, 562 F.3d at 175 (quoting ICJ Statute, art. 38(1), June 26, 1945, 59 Stat. 1055, 1060 T.S. No. 993).

■ In determining the existence of a CIL norm, "[a]greements that are not self-executing or that have not been executed by federal legislation . . . are appropriately considered evidence of the current state of customary international law." *Id.* at 176 In addition, "even declarations of international norms that are not in and of themselves binding may, with time and in conjunction with state practice, provide evidence that a norm has developed the specificity, universality, and obligatory nature required for ATS jurisdiction." *Id.*

### B. When a CIL Norm Gives Rise to an ATS Claim

■ In order to give rise to an ATS claim, a CIL norm must meet the three criteria set out in *Sosa v. Alvarez–Machain* ("*Sosa*"), 542 U.S. 692, 732, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004). Under *Sosa*, a CIL norm must be (1) universally accepted by the civilized world; (2) defined with a specificity comparable to the 18th-century norms regarding piracy, the right of safe passage, and offenses against ambassadors; and (3) abided or acceded to by States out of a sense of legal obligation and mutual concern (collectively, the "*Sosa* standard"). *See Id.; see also Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 173–74 (2d Cir. 2009).

### C. Standard of Review for Rule 12(b)(1) Motion to Dismiss an ATS Claim

■ Evaluating whether an ATS claim falls within a court's jurisdiction "requires a more searching review of the merits ... than is required under the more flexible 'arising under' [jurisdictional] formula of" 28 U.S.C. § 1331. *Id.* At this jurisdictional threshold, however, a court's more searching review is limited to determining (1) the existence of a CIL norm that meets the *Sosa* standard (the "legal sufficiency" of Plaintiffs' ATS claims), and, if so, (2) whether the evidence suggests that the CIL norm has been violated (the "factual sufficiency" of Plaintiffs' ATS claims). *See Kadic,* 70 F.3d at 238, 244 (holding that, at the jurisdictional stage, a plaintiff need not demonstrate that he can prove every element of his ATS claim); *cf. Arbaugh v. Y & H Corp.,* 546 U.S. 500, 511, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (" 'Subject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief-a merits-related determination' ") (quoting 2 J. Moore et al., Moore's Federal Practice § 12.30[1] (3d ed. 2005)).

■ Defendants' motion challenges both the legal and factual sufficiency of Plaintiffs' ATS claims.[3] When a motion to dismiss under Rule 12(b)(1) challenges the factual sufficiency of a plaintiffs' claims, a court may refer to evidence outside the pleadings. *See Makarova v. U.S.,* 201 F.3d 110, 113 (2d Cir.2000) (*citing Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir.1986)). This may include affidavits or other competent evidence. *See Kamen,* 791 F.2d at 1011. The burden is on the plaintiff to prove, by a preponderance of the evidence, that subject matter jurisdiction exists. *See Makarova* 201 F.3d at 113; *see also Luckett v. Bure,* 290 F.3d 493, 497 (2d Cir.2002); *Scelsa v. City Univ. of N.Y.,* 76 F.3d 37, 40 (2d Cir.1996).

■ Generally, a court deciding a Rule 12(b)(1) motion to dismiss may make factual determinations. *Grubart v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 537, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995) ("any litigation of a contested subject-matter jurisdictional fact issue occurs in comparatively summary procedure before a judge alone"). However, where the overlap between jurisdictional and merits evidence "is such that fact-finding on the jurisdictional issue will adjudicate factual issues required by the Seventh Amendment to be resolved by a jury, then the Court must leave the jurisdictional issue for the trial." *Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.,* 436 F.3d 82, 88 (2d Cir.2006).

### II. Whether Plaintiffs' ATS Claims Rely on CIL Norms that Meet the *Sosa* Standard

In support of their Rule 12(b)(1) motion, Defendants challenge the legal sufficiency of each of Plaintiffs' ATS claims. Defendants' challenge to the legal sufficiency of most of these claims is so unmeritorious as to warrant only summary treatment.[4]

---

**3.** Specifically, Defendants (1) challenge the legal sufficiency of all of Plaintiffs' ATS claims; to the extent that Plaintiffs' ATS claims are otherwise legally sufficient, Defendants further (2) challenge the legal and factual sufficiency of Plaintiffs' ATS claims insofar as those claims seek to hold Defendants' vicariously liable for the Nigerian govern-ment's tortious conduct; and (3) challenge the factual sufficiency of Plaintiffs' ATS claims against Anderson. Defendants challenge the Court's jurisdiction over Kpuinen's ATS claims based on the first *Sosa* condition.

**4.** Defendants' contention that the Court lacks subject matter jurisdiction over the following

However, Defendants also contend that the CIL norms, on which Plaintiffs' following two ATS claims rely, fail to meet the *Sosa* standard: (1) crimes against humanity, and (2) rights to life, liberty, and security of person and peaceful assembly and association ("rights related to peaceful assembly"). These challenges require more extensive treatment. As explained below, the Court concludes that Plaintiffs establish a CIL norm that meets the *Sosa* standard for crimes against humanity, but fail

to do so for rights related to peaceful assembly. Accordingly, the Court denies Defendants' motion to dismiss Plaintiffs' claims based on crimes against humanity, but grants Defendants' motion to dismiss Plaintiffs' claim based on rights related to peaceful assembly.

### A. Crimes Against Humanity

The Court, in a prior order, concluded that Plaintiffs had established an action-

ATS claims lacks merit and is treated only summarily: Plaintiffs' ATS claims for (1) summary execution; (2) cruel, inhuman, and degrading treatment ("CIDT"); and (3) arbitrary arrest and detention.

First, the Court finds unpersuasive Defendants' argument that there is no CIL norm against summary execution (also known as extrajudicial killing) that meets the *Sosa* standard. *See* Torture Victims Protection Act ("TVPA"), 28 U.S.C. § 1350 note (defining a federal cause of action for extrajudicial killing as one "not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples," unless, under international law, the killing was lawfully carried out by a foreign nation); S.Rep. No. 102–249, at pt. IV.A. (1991) & H.R.Rep. No. 102–367, at pt. III (1991), 1992 U.S.Code Cong. & Admin.News 1991, p. 84 (explaining that the TVPA codifies a universal and defined CIL norm against extrajudicial killing); *see also Geneva Convention Relative to the Treatment of Prisoners of War* ("Geneva Convention"), art. 3, Aug. 12, 1949, 6 U.S.T. 3316, 75 U.N.T.S. 135 (defining extrajudicial killing in similar terms as the TVPA); *Hamdan v. Rumsfeld*, 548 U.S. 557, 633, 126 S.Ct. 2749, 165 L.Ed.2d 723 (2006) (finding that, under customary international law, the "judicial guarantees which are recognized as indispensable by civilized peoples" include, at a minimum, those basic guarantees provided by the Geneva Convention, art. 75, Protocol I); Alston Decl. Ex. A (collecting the statements of over 100 countries describing their policy of providing due process prior to any execution and, for the most part, recognizing that international law obliges them to do so).

The Court's *Kiobel v. Royal Dutch Petroleum Co.*, 456 F.Supp.2d 457, 464–65

(S.D.N.Y.2006), decision found extrajudicial killing insufficiently well-defined to be actionable under the ATS. The Court's decision in *Kiobel* reflected the inadequate briefing before the Court in that case. *See* 456 F.Supp.2d at 465. On consideration of the extensive briefing before the Court on this motion, the Court concludes, contrary to its holding in *Kiobel*, that extrajudicial killing is actionable under the ATS.

Second, the Court finds unpersuasive Defendants' argument that the CIL norm against CIDT is insufficiently defined to meet the *Sosa* standard. *See In re South African Apartheid Litigation*, 617 F.Supp.2d 228, 252–56, 2009 WL 960078, at *9–10 (S.D.N.Y.2009) (defining the elements a plaintiff needs to prove in order to prevail on a CIDT claim); *see also Wiwa v. Royal Dutch Petroleum Co.*, No. 96 Civ. 8386, 2002 WL 319887, at *7–9 (S.D.N.Y. Feb. 28, 2002) (finding CIDT a sufficiently well-defined cause of action).

Third, Defendants argue *either* that *Sosa* held that there is no CIL norm against arbitrary arrest and detention that meets the *Sosa* standard, *or* that the Court should find that there is no CIL norm against arbitrary arrest and detention that is specific enough to meet the *Sosa* standard. This argument likewise lacks merit. *See Kiobel*, 456 F.Supp.2d at 463, 465–66 (finding the CIL norm against arbitrary arrest and detention sufficiently specific to support ATS claims, and noting that *Sosa*'s holding is "very narrow" and concludes *only* that " 'a single detention of less than a day, followed by the transfer of custody to lawful authorities and a prompt arraignment, violates no norm of customary international law so well defined as to support the creation of a federal remedy' ").

able CIL norm barring crimes against humanity. *See Wiwa*, 2002 WL 319887, at *9–10 (the Court's "2002 Order"). The Court's 2002 Order examined the Rome Statute of the International Criminal Court, decisions of international tribunals interpreting CIL norms, as well as reports and commentary issued by the United Nations, to determine that crimes against humanity is a norm that is "customary, obligatory, and well-defined in international jurisprudence." *Id.* In support of their instant motion, Defendants contend that the Court's previous conclusion does not survive the Supreme Court's subsequent decision in *Sosa*, because (1) under *Sosa*, the Court's conclusion relied on incompetent sources of international law; and/or (2) the Court, in its 2002 Order, failed to ensure that crimes against humanity are defined with sufficient specificity to meet the *Sosa* standard. Defendants' contentions are unpersuasive.

### 1. Sources of International Law

■ Defendants' argument that, after *Sosa*, the sources the Court relied upon in its 2002 Order are incompetent lacks merit. *See Abdullahi*, 562 F.3d at 187–88 (holding that, after *Sosa*, international agreements can still be "appropriately considered evidence of the current state of customary international law" even if they, *inter alia*, are not binding on the United States, and/or are not self-executing); *see also Khulumani*, 504 F.3d at 283 (warning district courts against "overstating the weight we [the Second Circuit] have placed on the self-executing status of a treaty in our consideration of its weight as evidence of [CIL]") (Katzmann, J. concurring, joined by Hall, J.). Indeed, since *Sosa* was decided, the Court has allowed ATS claims for crimes against humanity to proceed. *See Kiobel*, 456 F.Supp.2d at 466–67.

Furthermore, even assuming, *arguendo*, that the sources cited in the Court's 2002

Order cannot, on their own, establish a CIL norm that meets the *Sosa* standard, they are but some of the many sources that condemn crimes against humanity. (*See* Roht–Arriaza Decl. ¶¶ 11–25 (citing sources prohibiting crimes against humanity, including the 1907 preamble to the Hague Convention; the Nuremberg Charter; Control Council Law No. 10, which authorized the creation of the Nuremberg military tribunals; United Nations conventions and resolutions; and the statutes governing the International Criminal Tribunals for Rwanda and Yugoslavia as well as numerous decisions by those Tribunals).) As the Second Circuit has recognized, "[c]ustomary international law rules proscribing crimes against humanity … have been enforceable against individuals since World War II." *Flores v. Southern Peru Copper Corp.*, 343 F.3d 140, 151 (2d Cir.2003). Accordingly, the Court finds meritless Defendants' contention that Plaintiffs' crimes against humanity claims do not survive *Sosa* because *Sosa* deemed incompetent the sources on which those claims are based.

### 2. Specificity

■ Defendants' contention that the CIL norm prohibiting crimes against humanity is insufficiently specific to meet the *Sosa* standard is also unpersuasive. As Judge Cote explains at length in *Presbyterian Church of Sudan v. Talisman Energy Inc.*, 226 F.R.D. 456, 479–81 (S.D.N.Y. 2005), international law sources specifically define the elements a plaintiff must prove in order to prevail on a claim based on crimes against humanity.

Furthermore, although Defendants are correct that there is not universal agreement on every element of a claim based on crimes against humanity, this limited inconsistency does not frustrate the Court's jurisdiction to hear such claims. *See Abdullahi*, 562 F.3d at 184 (finding that a

CIL norm whose scope is uncertain at the margins is still sufficiently specific to support an ATS cause of action for "conduct that is at the core of any reasonable iteration" of the CIL norm). All the sources cited by Judge Cote agree that the type of tortious conduct at issue here, including torture, murder, political persecution, and unlawful imprisonment, constitute crimes against humanity. *See Presbyterian Church,* 226 F.R.D. at 479–81. Plaintiffs' ATS claims thus implicate the core of this CIL norm, not its disputed margins. The CIL norm against crimes against humanity is sufficiently specific to meet the *Sosa* standard.

Accordingly, the Court concludes that Plaintiffs' ATS claims for crimes against humanity are within the Court's subject matter jurisdiction.

## B. Rights Related to Peaceful Assembly

 The Court's 2002 Order also found that Plaintiffs' ATS claims for rights related to peaceful assembly were based in "well-articulated international norms." *See Wiwa,* 2002 WL 319887, at *10–12. As the Court's 2002 Order observes, at that time "defendants d[id] not dispute that customary international law prohibit[ed] violations" of rights related to peaceful assembly. *Id.* at *10. Now, however, Defendants do so. The Court agrees with Defendants that rights related to peaceful assembly do not meet the *Sosa* standard and thus cannot give rise to an ATS claim.

In the Court's 2002 Order, the Court relied on the definition of the right to peaceful assembly and expression articulated in the United Nation's *Code of Conduct for Law Enforcement Officials,* annex, 34 U.N. GAOR Supp., No. 46, at 186, U.N. Doc. A/34/46 (1979) (the "U.N.'s Code of Conduct"), and the *Basic Principles on the Use of Force and Firearms by Law Enforcement Officials, Eighth United Na-*

*tions Congress on the Prevention of Crime and the Treatment of Offenders,* principle 9, U.N. Doc. A/CONF. 144/28/Rev. 1, at 112 (1990) (the "U.N.'s Basic Principles"). Plaintiffs now provide several additional decisions by the European Court of Human Rights (the "ECHR") that they contend further define the CIL norm protecting rights related to peaceful assembly. (*See* Roht–Arriaza Decl. 15–16, 19.)

The sources cited in the Court's 2002 Order were promulgated or welcomed by resolutions passed by the United Nations General Assembly (the "U.N. G.A."). Such resolutions can help confirm a CIL norm, but they are not sufficient, on their own, to define such a norm. *Cf. Abdullahi,* 562 F.3d at 176–77 (holding that nonbinding declarations can help establish that a CIL norm meets the *Sosa* standard, but only when other sources demonstrate that the norms articulated in the non-binding declarations have been broadly incorporated into states' practices).

The four ECHR cases Plaintiffs cite also do not suffice to define the CIL norm protecting rights related to peaceful assembly. First, these cases interpret a regional human rights convention, not one generally open to, and joined by, civilized nations. Thus, these cases do not, on their own, establish international law for the purpose of establishing a court's subject matter jurisdiction over ATS claims. *See supra* pt. I.B. (discussing the sources that determine the existence and substance of a CIL norm, and noting that judicial decisions are only a subsidiary source of CIL norms).

Second, the ECHR's decisions do not otherwise evidence a CIL norm that meets the *Sosa* standard. The ECHR's decisions may help establish that some states have incorporated the norm protecting rights related to peaceful assembly as defined in the U.N.'s Code of Conduct and Basic

Principles. Even so, incorporation of this definition by the European states subject to the ECHR is not sufficient to establish an international consensus regarding this definition. Two U.N. resolutions and four ECHR decisions fall far short of the evidence the Second Circuit found sufficient to demonstrate a CIL norm that met the *Sosa* standard for specificity. *See Abdullahi,* 562 F.3d at 184–85 (finding that a CIL norm meets the *Sosa* standard for specificity where multiple international agreements (including one that is binding on more than 160 signatory states), as well as the domestic laws of over 80 states, adopt a particular definition of that norm).[5]

The Court concludes that neither the sources cited in the Court's, 2002 Order alone, nor those sources supplemented by the ECHR decisions Plaintiffs provide, suffice to demonstrate a CIL norm that is sufficiently specific to meet the *Sosa* standard.[6] *Accord Bowoto v. Chevron Corp.,* 557 F.Supp.2d 1080, 1095 (N.D.Cal.2008); *Kiobel,* 456 F.Supp.2d at 467. Accordingly, the Court dismisses for lack of subject matter jurisdiction Plaintiffs' ATS claims based on rights related to peaceful assembly.

## C. Conclusion

For the reasons stated above, the Court (1) denies Defendants' motion to dismiss Plaintiffs' claim based on crimes against humanity, and (2) grants Defendants' motion to dismiss Plaintiffs' claim based on rights related to peaceful assembly.

## III. Vicarious–Liability

■■■ Defendants purport to challenge the legal and factual sufficiency of Plaintiffs' ATS claims insofar as Defendants argue that the Court has subject matter jurisdiction over Plaintiffs' ATS claims only if Plaintiffs can hold Defendants vicariously liable for the Nigerian government's tortious conduct. Plaintiffs respond that whether they can hold Defendants vicariously liable for the Nigerian government's tortious conduct is irrelevant to determining the Court's subject matter jurisdiction over Plaintiffs' ATS claims. According to Plaintiffs, the Court has jurisdiction over Plaintiffs' ATS claims if Plaintiffs establish that the Nigerian government violated a CIL norm meeting the *Sosa* standard.[7] Plaintiffs contend that whether they can hold Defendants vicariously liable for the Nigerian government's tortious conduct is a purely merits-based question, not also a jurisdictional question. The Court agrees with Plaintiffs that the Court's jurisdiction over Plaintiffs' ATS claims does not turn on whether Plaintiffs can hold Defendants vicariously liable for the Nigerian government's tortious conduct.

There is no clear law on this subject; there is only ambiguous dicta. *See, e.g., Khulumani v. Barclay Nat'l Bank Ltd.,* 504 F.3d 254, 260 (2d Cir.2007) (holding, *per curiam,* that aiding and abetting liability can be pled in ATS claims but not

5. A CIL norm may meet the *Sosa* standard for specificity even if there are fewer, and less persuasive, international law sources defining that norm than were present in *Abdullahi.* However, wherever the outer limit of the *Sosa* standard for specificity lies, the sources defining the CIL norm protecting rights related to peaceful assembly fall outside of it.

6. Because the Court finds that it lacks subject matter jurisdiction over Plaintiffs' ATS claim based on rights related to peaceful assembly,

the Court need not reach Defendants' contention that Plaintiffs Kogbara and Nuate cannot bring such a claim because they were not engaged in peaceful protest when they were harmed.

7. Defendants do not contest that, to the extent that Plaintiffs' ATS claims are based on CIL norms that meet the *Sosa* standard, the Nigerian government's tortious conduct violated those norms.

clearly stating whether a court's subject matter jurisdiction over ATS claims turns on this determination). However, the Second Circuit's recent decision in *Abdullahi*, 562 F.3d 163, persuades the Court that its jurisdiction over Plaintiffs' ATS claims does not turn on whether Plaintiffs can hold Defendants vicariously liable for the Nigerian government's tortious conduct.

The plaintiffs in *Abdullahi*, like the *Wiwa* Plaintiffs, asserted ATS claims against a corporation. However, the *Abdullahi* plaintiffs alleged that the corporate defendant was *directly*, rather than *vicariously*, liable for violating a CIL norm. In *Abdullahi*, the Second Circuit did not consider, in its *jurisdictional* analysis, whether the corporate defendant could be held liable for violating the CIL norm at issue. Instead, in *Abdullahi*, the Second Circuit *concluded* its jurisdictional analysis once it established generally that a CIL norm meeting the *Sosa* standard prohibited the kind of tortious conduct the

*Abdullahi* plaintiffs alleged. *After* concluding its jurisdictional analysis, the Second Circuit *then* turned to the question of whether the corporate defendant could be held liable for violating the CIL norm. *See id.* at 17–18.

If the Second Circuit in *Abdullahi* considered the question of a defendant's *direct* liability for a violation of a CIL norm non-jurisdictional, it follows that the question of a defendant's *vicarious* liability is also non-jurisdictional.[8]

This conclusion also comports with the Second Circuit's reasoning in *Kadic*, 70 F.3d at 238. In *Kadic*, the Second Circuit concluded its jurisdictional analysis once it had determined that the plaintiff had alleged conduct that violated an actionable CIL norm. *See id.* The Second Circuit specifically stated that a court's jurisdiction over the plaintiff's ATS claims did not turn on whether he could prove every element of those claims, including the *mens rea*, or *actus rea* elements of his ATS

---

**8.** Defendants argue that a footnote in *Sosa*, 542 U.S. at 733 n.20, 124 S.Ct. 2739(the "*Sosa* footnote"), holds, to the contrary, that a court must determine, as part of its jurisdictional analysis, whether a plaintiff bringing ATS claims may seek to hold a defendant vicariously liable for the tortious conduct giving rise to those claims. The Court disagrees with Defendants' construction of the *Sosa* footnote.

*Sosa* held that courts should only recognize federal common law causes of action brought pursuant to the ATS if a plaintiff alleges a violation of a sufficiently universal, specific, and mutually binding CIL norm. *Id.* at 732, 124 S.Ct. 2739. The *Sosa* footnote states that, when a court is making this determination, "a related consideration is whether international law extends the scope of liability for a violation of a given norm to the perpetrator being sued, if the defendant is a private actor such as a corporation or individual." *Id.* at 733 n. 20, 124 S.Ct. 2739. The *Sosa* footnote then cites two cases that considered whether only state actors, or also private actors, could be held *directly* liable for violations of a given CIL norm.

Defendants' construction of the *Sosa* footnote is unpersuasive for three reasons. First, the *Sosa* footnote is merely dictum. Second, the *Sosa* footnote, like the overall decision, is concerned not with the scope of a court's jurisdiction under the ATS, but with what causes of action a court should recognize when exercising that jurisdiction. Third, although the *Sosa* footnote is cast in broad terms, read in context, the *Sosa* footnote is concerned only with who can be held *directly* liable for primary violations of a CIL norm. Even if a court, as part of its jurisdictional analysis pursuant to the ATS, must consider who can be held *directly* liable for violating a CIL norm, it does not follow that a court must also consider whether a defendant can be held *vicariously* liable as part of the court's jurisdictional analysis. (Defendants also misread the Second Circuit's decision in *Kadic v. Karadzic*, 70 F.3d 232, 244 (2d Cir.1996), which also considered only whether a private actor could be held *directly*, not *vicariously*, liable for violations of a CIL norm.)

claims. *See id.* at 244. Again, if these critical elements of ATS claims are ancillary and non-jurisdictional, then whether a plaintiff can hold a particular defendant vicariously liable for the tortious conduct giving rise to his ATS claim is also an ancillary, non-jurisdictional question.[9] *Id.* at 244.

Accordingly, to the extent that Defendants' motion to dismiss challenges Plaintiffs' legal and factual basis for holding Defendants vicariously liable for tortious conduct, Defendants' motion is denied.[10]

## IV. Anderson

■■■ Defendants challenge the factual sufficiency of Plaintiffs' ATS claims against Anderson. Specifically, Defendants contend that Plaintiffs have failed to establish a factual basis for the Court to assume subject matter jurisdiction over Plaintiffs' ATS claims against Anderson.[11] Defendants argue that Plaintiffs have no evidence that Anderson violated a CIL norm. Defendants' contention implicates the merits of Plaintiffs' ATS claims against Anderson, as well as the Court's jurisdiction over those claims. There are material factual disputes regarding Anderson's involvement in the allegedly tortious conduct. (*Compare, e.g.,* Pls.' Opp'n 29 *with* Anderson's Reply 5–6 (describing conflicting accounts of a meeting between Anderson and plaintiff Owens Wiwa)). Even assuming, *arguendo,* that Defendants raise a jurisdictional, as well as a merits, issue, the facts necessary to resolve this jurisdictional issue are sufficient-

9. The logical consequence of the Court's conclusion here is that Defendants' challenge should have been raised in a motion to dismiss for failure to state a claim upon which relief can be granted or in a motion for summary judgment, *see* Fed.R.Civ.P. 12(b)(6), 56, rather than in a motion to dismiss for lack of subject matter jurisdiction.

Defendants contend that, should the Court deem non-jurisdictional the question of whether Plaintiffs may hold Defendants vicariously liable for the Nigerian government's tortious conduct, the Court would throw open the courthouse doors to frivolous lawsuits. Because a defendant has ample opportunity to challenge a plaintiff's legal and factual basis for seeking to hold a defendant vicariously liable, for instance by filing the Rule 12(b)(6) or Rule 56 motions described here, the Court finds Defendants' contention unpersuasive.

10. Because the Court deems non-jurisdictional the question of whether Plaintiffs must demonstrate that they can hold Defendants vicariously liable for the Nigerian government's tortious conduct, the Court need not reach the parties' arguments about (1) what law a court looks to in order to determine whether a plaintiff bringing ATS claims may hold a defendant vicariously liable: international law, federal common law, or forum state law; (2) whether, under the source of law the court determines to be applicable, a plaintiff may hold a defendant vicariously liable; and, (3) to the extent that a plaintiff may hold a defendant vicariously liable under the applicable law, whether or not Plaintiffs have provided sufficient evidence of Defendants' vicarious liability.

The Court notes, however, that it finds persuasive Judge Scheindlin's thoughtful treatment of the first two of Defendants' arguments in *In re South African Apartheid Litigation,* 617 F.Supp.2d at 254–64, 270–74, 2009 WL 960078, at *10–15, 21–22 (looking to international law to determine whether plaintiffs can hold defendants vicariously liable for a government's tortious conduct, but looking to federal common law to develop the specific standard to apply where the international law governing these ancillary issues lacks sufficient specificity).

11. As indicated supra note 10, to the extent that Plaintiffs seek to hold Anderson vicariously liable for violating CIL norms, Defendants' contention regarding the sufficiency of Plaintiffs' evidence is not germane to deciding this jurisdictional motion. However, Plaintiffs are unclear as to whether they seek to hold Anderson directly, as well as vicariously, liable for violating CIL norms. The Court thus considers Defendants' contention to the extent that Plaintiffs seek to hold Anderson directly liable for violating CIL norms.

ly intertwined with the merits of Plaintiffs' ATS claims against Anderson, and are sufficiently disputed, that the Court must leave the determination of this jurisdictional issue to trial. *See Pyramid Crossgates,* 436 F.3d at 88.

Accordingly, to the extent that Defendants contest the Court's subject matter jurisdiction based on the sufficiency of Plaintiffs' evidence of Anderson's *direct* involvement in violating a CIL norm, Defendants' motion is denied without prejudice and with leave to refile during trial.

**V. Kpuinen**

■ Defendants contend that the Court lacks subject matter jurisdiction over Kpuinen's ATS claims because the ATS grants jurisdiction only when an *alien* sues, and Kpuinen has become a United States citizen since bringing this lawsuit.

Defendants' contention is unpersuasive. Defendants rely on decisions that hold that a court's subject matter jurisdiction ceases if a plaintiff, in amending her complaint or filing a pretrial order, abandons the allegations or claims on which the court's jurisdiction was based. *See Rockwell Int'l Corp. v. United States,* 549 U.S. 457, 473–74, 127 S.Ct. 1397, 167 L.Ed.2d 190 (2007) (pretrial order); *Connectu v. Zuckerberg,* 522 F.3d 82, 92–93 (1st Cir.2008) (amended complaint); *United States v. Caremark,* 496 F.3d 730, 735 (7th Cir.2007) (amended complaint). Those cases are inapposite.

Although Kpuinen has amended her complaint five times, she has not abandoned her allegation that she was not a United States citizen (1) at the time she and her husband, on whose behalf she also brings ATS claims, were harmed, or (2) at the time she brought this lawsuit. (*See, e.g.,* Fifth Am. Compl. ¶ 9 (alleging that Kpuinen became a United States citizen in 2004 and was a citizen of Nigeria before that).) Defendants provide no basis for the Court to interpret the ATS to require

that a plaintiff remain an alien throughout the duration of her lawsuit, and the Court is not aware of any. Accordingly, the Court finds Defendants' contention that the Court lacks subject matter jurisdiction over Kpuinen's ATS claims unpersuasive.

**CONCLUSION**

As explained above, the Court GRANTS in part and DENIES in part Defendants' motion. (96–D.E. 330.) Specifically, the Court dismisses Plaintiffs' ATS claim based on rights related to peaceful assembly but otherwise denies Defendants' motion.

SO ORDERED.