PER CURIAM:
I
The plaintiffs in this action bring claims under the Alien Tort Claims Act, 28 U.S.C. § 1350 (“ATCA”), against approximately fifty corporate defendants and hundreds of “corporate Does.” The plaintiffs argue that these defendants actively and willingly collaborated with the government of South Africa in maintaining a repressive, racially based system known as “apartheid,” which restricted the majority black African population in all areas of life while providing benefits for the minority white population.
Three groups of plaintiffs filed ten separate actions in multiple federal district courts asserting these apartheid-related claims. See In re S. African Apartheid Litig., 346 F.Supp.2d 538, 542 (S.D.N.Y.2004). One group, the Khulumani Plaintiffs, filed a complaint against twenty-three domestic and foreign corporations, charging them with various violations of international law.[1] The other two groups, the Ntsebeza and Digwamaje Plaintiffs, brought class action claims on behalf of the “victims of the apartheid related atrocities, human rights’ violations, crimes against humanity and unfair [and] discriminatory forced labor practices.” The Digwamaje Plaintiffs also brought claims under the Torture Victim Protection Act of 1991, Pub.L. 102-256, 106 Stat. 73 (1992), codified at 28 U.S.C. § 1350 note (“TVPA”), and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq. (“RICO”).
In August 2002, the Ntsebeza Plaintiffs filed a motion with the Judicial Panel on Multidistrict Litigation (“MDL Panel”) to transfer all of the actions to the Southern District of New York, and in December 2002, the MDL Panel ordered that transfer for coordinated pre-trial proceedings. See In re S. African Apartheid Litig., 238 F.Supp.2d 1379, 1380-81 (J.P.M.L.2002). In July 2003, thirty-one of the fifty-five defendants in the Ntsebeza and Digwa-maje actions filed a joint motion to dismiss. Following the transfer of the Khulumani complaint to the Southern District of New York, eighteen of the twenty-three defendants in that action also filed a joint motion to dismiss.[2]
*259 Later that month, Penuell Mpapa Machi-na, who was then the Minister of Justice and Constitutional Development for South Africa, submitted an ex parte declaration to the district court, stating that the South African government regarded these proceedings as interfering “with a foreign sovereign’s efforts to address matters in which it has the predominant interest” and asking that the proceedings be dismissed.[3] After receiving the South African declaration, the district court, sua sponte, solicited the views of the United States Department of State.[4] The State Department responded by submitting a “Statement of Interest” asserting that “continued adjudication of the above-referenced matters risks potentially serious adverse consequences for significant interests of the United States.”
Ruling on the defendants’ motions to dismiss, the district court held that the plaintiffs failed to establish subject matter jurisdiction under the ATCA. The district court ruled further that the plaintiffs, having asserted diversity as an alternate basis for jurisdiction, could not establish subject matter jurisdiction on that ground. The district court also held that the plaintiffs failed to state a claim under the TVPA and failed to establish subject matter jurisdiction under RICO. See In re S. African Apartheid Litig., 346 F.Supp.2d at 554-57. The district court therefore dismissed the plaintiffs’ complaints in their entirety. See id. at 557. In March 2005, the Ntsebeza and Digwamaje Plaintiffs moved for permission to file an amended consolidated complaint,[5] which the district court denied. See Part IV, infra. Following the district court’s issuance of an amended judgment containing an amended Rule 54(b) certification, the plaintiffs filed timely notices of appeal.[6]
II
All members of the panel join to affirm the district court’s dismissal of the Digwamaje Plaintiffs’ TVPA claims. The Digwamaje Plaintiffs asserted a claim under the TVPA, alleging that the defendants “aided and abetted the apartheid regime’s subjecting the Plaintiffs to torture and extrajudicial killing within the meaning of the Torture Victim Protection Act ... under actual or apparent authority, or under color of law.” The TVPA provides:
An individual who, under actual or apparent authority, or color of law, of any foreign nation-
*260 (1) subjects an individual to torture shall, in a civil action, be liable for damages to that individual; or
(2) subjects an individual to extrajudicial killing shall, in a civil action, be liable for damages to the individual’s legal representative, or to any person who may be a claimant in an action for wrongful death.
28 U.S.C. § 1350 note § 2(a). For purposes of the TVPA, an individual “acts under color of law ... when he acts together with state officials or with significant state aid.” Kadic v. Karadzic, 70 F.3d 232, 245 (2d Cir.1995). The Digwa-maje Plaintiffs, although twice having amended their complaint, failed to link any defendants to state aid or the conduct of state officials.
Further, based on the district court’s discussion of the matter of diversity jurisdiction, we affirm the dismissal of the complaints insofar as they seek to assert jurisdiction under 28 U.S.C. § 1332(a)(3).
Ill
Two members of this panel join to vacate the district court’s dismissal of the plaintiffs’ ATCA claims because the district court erred in holding that aiding and abetting violations of customary international law cannot provide a basis for ATCA jurisdiction. We hold that in this Circuit, a plaintiff may plead a theory of aiding and abetting liability under the ATCA. The respective rationales of Judges Katzmann and Hall are set forth in separate concurring opinions.
IV
We further vacate the district court's order denying plaintiffs' motion for leave to amend. In denying this motion, the district court relied, in part, on the erroneous premise that subject matter jurisdiction did not inhere and reasoned that any additional amendments to the pleadings would be futile. Because the denial of the motion rested, in part, on this erroneous premise, we vacate that order. See Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 177 (2d Cir.2006) ("The standard for reviewing the denial of a motion to amend a complaint is abuse of discretion .. . (internal quotation marks omitted)); see also Zervos v. Verizon N. Y., Inc., 252 F.3d 163, 169 (2d Cir.2001) ("A district court `abuses' or `exceeds' the discretion accorded to it when . . . its decision rests on an error of law (such as application of the wrong legal principle)... . ~~)•[7] Until the district court has an opportunity to rule on the motion to amend, we cannot be sure that the pleadings in the record before us represent the final version of the plaintiffs' allegations. We therefore decline to de *261 termine whether the plaintiffs have adequately pled a violation of international law sufficient to avail themselves of jurisdiction under the ATCA and remand to the district court to allow it to address the pleadings after amendment as may be permitted has occurred.
V
Moreover, we decline to affirm the dismissal of plaintiffs’ ATCA claims on the basis of the prudential concerns raised by the defendants.[8] In Sosa v. Alvarez-Machain, 542 U.S. 692, 733 n. 21, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004), the Supreme Court identified two different respects in which courts should consider prudential concerns in deciding whether to hear claims brought under the ATCA. First, the Supreme Court held that courts should consider prudential concerns in the context of determining whether to recognize a cause of action under the ATCA. Specifically, the Court explained that “the determination whether a norm is sufficiently definite to support a cause of action should (and, indeed, inevitably must) involve an element of judgment about the practical consequences of making that cause available to litigants in the federal courts.” Sosa, 542 U.S. at 732-33, 124 S.Ct. 2739 (internal footnote omitted). Second, the Supreme Court recognized that, in certain cases, other prudential principles might operate to “limit[ ] the availability of relief in the federal courts for violations of customary international law.” Id. at 733 n. 21, 124 S.Ct. 2739.[9]
One such principle specifically identified by the Court was “a policy of case-specific deference to the political branches.” Id. This policy of “[jjudicial deference to the Executive Branch on questions of foreign policy has long been established under the prudential justiciability doctrine known as the ‘political question’ doctrine.” Whiteman v. Dorotheum GmbH & Co. KG, 431 F.3d 57, 69 (2d Cir.2005). Another prudential doctrine that the defendants raise in this case is “international comity.” See, e.g., Sosa, 542 U.S. at 761, 124 S.Ct. 2739 (Breyer, J., concurring) (suggesting that courts should consider “whether the exercise of jurisdiction under the [ATCA] is *262 consistent with those notions of comity that lead each nation to respect the sovereign rights of other nations by limiting the reach of its laws and their enforcement”). This doctrine, the application of which “ordinarily lies within the discretion of the district court,” asks whether “adjudication of [the] case by a United States court would offend amicable working relationships with [a foreign country].”[10] Bigio v. Coca-Cola Co., 448 F.3d 176, 178 (2d Cir.2006) (internal quotation marks omitted).
In dismissing the plaintiffs’ complaints below, the district court explicitly refrained from addressing the defendants’ arguments that the ATCA claim presented a non-justiciable political question.[11] In re S. African Apartheid Litig., 346 F.Supp.2d at 543 n. 4 (“Defendants also argue that ... the matter is a non-justiciable political question. Given the Court’s finding that defendants are entitled to relief on other grounds, the Court need not address these remaining grounds for defendants’ motion.” (internal citation omitted)). Although the district court noted some collateral consequences that might result from the adjudication of these kinds of claims, the consequences it noted were primarily those “that would result from allowing courts in this country to hear civil suits for the aiding and abetting of violations of international norms across the globe.” Id. at 551. Furthermore, the district court expressly characterized its consideration of the collateral consequences as fulfilling its “duty to engage in ‘vigilant doorkeeping.’ ” Id. at 550 (quoting from Sosa, 542 U.S. at 729, 124 S.Ct. 2739); see also id. at 553. As Sosa makes clear, this duty is fulfilled in the decision of a federal court to exercise its judicial discretion to recognize a cause of action for a violation of customary international law, an issue distinct from whether the adjudication of a given suit is barred by political question doctrine. Sosa, 542 U.S. at 729, 124 S.Ct. 2739. We see no reason to read the district court’s citation to this part of Sosa as an indication that the court was also (and contrary to its explicit disclaimer) engaged in a consideration of the political question or other prudential doctrines.[12] To the extent that limited portions of the district court’s discussion were addressed to the statements of interest submitted by the governments of the United States and South Africa, In re S. African Apartheid Litig., 346 F.Supp.2d at 553-54, these *263 statements were merely illustrative of a general concern with what the court saw as the “far-reaching” consequences of the specific norm it was then discussing (ie., doing business in South Africa), id. at 553. The citation to Sosa’s footnote 21 indicates only that the district court considered the views of those governments in assessing “the collateral consequences that would result from finding a new international law violation,” id., and does not suffice to demonstrate that the court (again contrary to its stated intentions) adopted sub rosa the defendants’ political question arguments.
We decline to address these case-specific prudential doctrines now and instead remand to the district court to allow it to engage in the first instance in the careful “case-by-case” analysis that questions of this type require. This approach is particularly appropriate here because the plaintiffs have indicated that, if given the opportunity, they would narrow their claims and clarify the nature of their allegations against the various defendants, changes that may affect how the district court ultimately decides to resolve these issues. Oral Argument Tr., Jan. 24, 2006 at 7-8, 14-15; cf. Zivotofsky v. Sec’y of State, 444 F.3d 614, 619-20 (D.C.Cir.2006) (holding that, where the specific relief sought by the plaintiff had changed, remand was appropriate to allow the district court to develop a more complete record as to whether the revised claim presented a nonjusticiable political question).[13]
On remand, the district court will have an opportunity to consider the guidance provided by our prior cases regarding the relevant weight of statements of interest submitted by the United States and other governments. In Whiteman, for example, we addressed “when, and to what extent, ... the stated foreign policy interests of the United States [should] be accorded deference,” and we held that we should be guided in this determination by “our application of the political question doctrine.” 431 F.3d at 69, 71. In that context, we held that “not every case ‘touching foreign relations’ is nonjusticiable and judges should not reflexively invoke these doctrines to avoid difficult and somewhat sensitive decisions in the context of human rights. We believe a preferable approach is to weigh carefully the relevant considerations on a case-by-case basis.” Id. at 69 (quoting Kadic, 70 F.3d at 249). We have held that “even an assertion of the political question doctrine by the Executive Branch, entitled to respectful consideration, would not necessarily preclude adjudication.” [14] Kadic, 70 F.3d at 250. Likewise, although the views of foreign nations are an important consideration under the doctrine of “international comity,” we have not held them to be dispositive. See, e.g., Jota v. Texaco Inc., 157 F.3d 153, 159-61 (2d Cir.1998). At this stage in the litiga *264 tion, we express no view as to what level of deference to their views is appropriate in this particular case. Instead, we remand to the district court so that it may carefully consider whether any of these doctrines require dismissal.
VI
We therefore Affirm the district court’s dismissal of the Digwamaje Plaintiffs’ TVPA claims. We also Affirm the district court’s determination that the plaintiffs have failed to satisfy the diversity requirements of 28 U.S.C. § 1332(a)(3). We Vacate the district court’s dismissal of the plaintiffs’ ATCA claims, as well as the district court’s denial of the Digwamaje and Ntsebeza Plaintiffs’ motions to amend and Remand for further proceedings consistent with this opinion.

. The Khulumani Plaintiffs include the Khulu-mani Support Group, a South African nongovernmental organization that “works to assist victims of apartheid-era violence and has 32,700 members who are survivors of such violence,” as well as ninety-one individual plaintiffs who are "the personal representatives of victims of extrajudicial killing, or were themselves tortured, sexually assaulted, indiscriminately shot, or arbitrarily detained by the apartheid regime.”

. Apparently, not all of the named defendants in the three actions have been served with complaints, and some defendants have indicated that they plan to contest personal jurisdiction. The district court’s order granting the motion to dismiss stated that it was “limited to those defendants as to whom the Court's personal jurisdiction is not contested.” In re S. African Apartheid Litig., 346 F.Supp.2d at 543 n. 3. In addition, eleven of the defendants who joined the motion to dismiss filed separate motions to dismiss on the ground that the plaintiffs’ claims were conclu-sory and failed to meet the pleading standards of Fed.R.Civ.P. 8(a). The district court did *259 not reach those arguments in deciding the motion to dismiss.

.The Ntsebeza and Digwamaje Plaintiffs moved to strike Maduna's declaration and submissions, asserting that the declaration contained "legal argument by a non-party” and "conclusory allegations not supported by any creditable citation to the record,” and recited "disputed evidentiary facts.” They also argued that international comity could only be raised by a party as an affirmative defense, and even if comity were available, "it would be inappropriate for the Court to dismiss this case without making fact-bound determinations that cannot be made on this record....” The docket sheet indicates that the district court never ruled on this motion.

. Specifically, the district court inquired whether "adjudication of these cases would have an adverse impact on the interests of the United States and, if so, the nature and significance of any such impact.”

. The plaintiffs sought to provide particularized allegations directed at particular defendants, to “meet the new Sosa standard,” and to clarify for the district court that their ATCA claims were not based upon the corporations "merely doing business” in South Africa.

. The Digwamaje Plaintiffs have not challenged the dismissal of their RICO claim.

. Although the district court rested its decision to deny the plaintiffs' motion to replead on several grounds, it is not clear from the district court's order that it would have reached the same result in the absence of its erroneous belief that any amendment would be futile. It seems most respectful of the district court's considerable discretion in this area to allow it to determine in the first instance whether to allow the plaintiffs to replead. In that same vein, we also leave to the district court on remand the first opportunity to consider any motion that may be filed by the Khulumani plaintiffs seeking permission to amend their complaint.
We do not, however, believe it is necessary to vacate the district court's order to the extent that it denied the plaintiffs’ motion with respect to their TVPA claims. Given that the plaintiffs had previously amended their complaint twice and did not bring the present motion to amend until after the district court's order dismissing the case, the district court did not abuse its discretion in denying them leave to replead. See, e.g., Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir.2000) ("A district court has broad discretion in determining whether to grant leave to amend, and we review such determinations for abuse of discretion.”).

. In his dissent, Judge Korman adamantly asserts that our opinion fails to show deference to the position of the Republic of South Africa, a position that also commands the support of the United States Department of State. Opinion of Judge Korman at 306-11. He presents an analysis of prudential considerations, the strength of which we decline to address, that may well suggest a roadmap for future motion practice before the district court on remand. Id. at 295-306. Implicit throughout is the suggestion that by correcting the district court's error and clarifying the applicability of accessorial liability to violations of international law, we have somehow irrevocably, and to the derogation of South Africa's sovereignty, relegated the plaintiffs’ claims to the judicial processes of the United States. With all due respect, Judge Korman's position in this regard is overstated and ignores the fact that well before any steps can be taken to address the merits of plaintiffs' claims, the district court may allow for a full airing of prudential concerns and, if it so chooses, engage in an analysis of, and decision regarding, those and other issues, something that has been heretofore lacking.

. We reject the proposition endorsed by Judge Korman that the Supreme Court, in a footnote written while deciding a different case, would instruct us on how to decide this case, which was not before it. Opinion of Judge Korman at 295-96. Instead, we take the Supreme Court’s language in footnote 21 of Sosa at face value, as simply observing that there is a strong argument that the views of the Executive Branch on the issue of the case's impact on foreign policy should be given "serious weight.” Sosa, 542 U.S. at 733 n. 21, 124 S.Ct. 2739. We view summary dismissal at the behest of a footnote as premature. See Cent. Va. Cmty. College v. Katz, 546 U.S. 356, 363, 126 S.Ct. 990, 163 L.Ed.2d 945 (2006).

. The parties agree that Sosa’s reference to “case-specific deference” implicates either the political question or international comity doctrine.

. Judge Korman suggests that the content of the Defendant's Joint Motion to Dismiss (“Joint Motion”), cited by the district court, supports the view that the issue of deference to other political branches was addi-essed below. Opinion of Judge Korman at 307. We fail to see how the content of a motion, the basis for which Judge Korman concedes the district court "declin[ed] to address,” id., lends any support to the proposition that the district court reached the issues addressed therein.

. It was error for the district court to consider these collateral consequences in the context of deciding preliminarily whether it had jurisdiction to hear this case under the ATCA. However, even if we construed the district court's discussion of the “collateral consequences” as a decision not to recognize a cause of action for plaintiffs’ claims, in which context consideration of these consequences would have been appropriate, remand would still be necessary because the district court's decision not to recognize a cause of action might still have rested, in part, on its erroneous view that the ATCA does not allow for claims of aiding and abetting liability. Because we cannot know whether the district court would have declined to recognize the cause of action plaintiffs bring in the absence of that error, we believe it is appropriate to remand, so it can have the opportunity to decide this issue in the first instance.

. While we cannot know how these developments will affect the positions of the United States and South Africa with respect to this litigation, the district court may wish to solicit anew the views of these governments, and thus that fact, too, counsels against us reaching these issues at this time.

. We do not believe the Supreme Court’s statement in Sosa is to the contrary. Sosa, 542 U.S. at 733 n. 21, 124 S.Ct. 2739 (noting only that "there is a strong argument that federal courts should give serious weight to the Executive Branch's view of the case's impact on foreign policy"). Indeed, to give dispositive weight to the Executive Branch's views would likely raise serious separation-of-powers concerns. Cf., e.g., First Nat’l City Bank v. Banco Nacional de Cuba, 406 U.S. 759, 763, 92 S.Ct. 1808, 32 L.Ed.2d 466 (1972) (Powell, J., concurring) ("I would be uncomfortable with a doctrine which would require the judiciary to receive the Executive’s permission before invoking its jurisdiction. Such a notion, in the name of the doctrine of separation of powers, seems to me to conflict with that very doctrine.”).