Saadya MASTAFA, Kafia Ismail, Batul Nur, Afaf Rasool, Zahra Rasool, Plaintiffs,

v.

CHEVRON CORP., Banque Nationale de Paris Paribas, Defendants.

No. 10 Civ 5646(JSR).

United States District Court, S.D. New York.

Nov. 29, 2010.

John Timothy Murray, Dennis E. Murray, Leslie O. Murray, Murray and Murray Co. L.P.A., Sandusky, OH, for Plaintiffs.

Gregory G. Katsas, Michael Anthony Carvin, Jones Day, Ellen Swennes Kennedy, Robert Stephen Bennett, Hogan Lovells US LLP, Jennifer Lynn Spaziano, William John O'Brien, III, Skadden, Arps, Slate, Meagher & Flom LLP (DC), Washington, DC, Meir Feder, Thomas E. Lynch, Jones Day, New York, NY, for Defendants.

## MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

The plaintiffs have brought suit against defendants Chevron Corporation ("Chevron") and Banque Nationale de Paris Paribas ("BNP Paribas") for allegedly providing support and aid to the Saddam Hussein regime during a period of time when such support and aid was allegedly utilized to help commit various human rights abuses, including the torture and killing of the plaintiffs and/or the plaintiffs' family members. The plaintiffs have brought claims under the Alien Tort Statute ("ATS") and the Torture Victims Protection Act ("TVPA"), in addition to various New York state common law claims. On September 30, 2010, both defendants moved to dismiss all of the claims against them. On October 27, 2010, the Court heard oral argument on the motions to dismiss. For the reasons stated in open court, see Transcript, 10/27/10, the Court dismissed all ATS claims as well as all state common law claims. The Court reserved judgment on the TVPA claims. For the reasons stated herein, the Court now dismisses these claims as well and directs the entry of final judgment.

By way of background, in 1990, in response to Iraq's invasion and occupation of Kuwait, the United Nations Security Council adopted Resolution 661, which imposed economic sanctions on Iraq and prohibited states from providing funds to Iraq. In 1995, the Security Council adopted Resolution 986 and enacted the Oil–for–Food Program, which permitted the export of oil from Iraq in exchange for food, medicine, and other basic civilian necessities. The resolution called for the creation of an escrow account into which purchasers of Iraqi oil would deposit pay-

ments and from which sellers of authorized goods would receive payments. This account was administered by defendant BNP Paribas, a bank located in Paris, France. An investigation into the Oil–for–Food Program conducted by the United Nations revealed that the Saddam Hussein regime obtained income outside the oversight of the United Nations by imposing illegal surcharges on oil purchasers. The complaint alleges that Chevron was one of the oil purchasers that paid illegal surcharges in violation of Resolution 986. Compl. ¶¶ 38–39. The complaint also alleges that BNP Paribas, as the sole escrow bank for the Oil–for–Food Program, "knowingly and willfully hid the true nature of the financial transactions from the United Nations and the international community." *Id.* ¶ 106.

The plaintiffs are victims of some of the human rights abuses perpetrated by the Saddam Hussein regime between 1996 and 2003. Plaintiff Saadya Mastafa is a Kurdish woman whose husband was captured on September 1, 1996 and executed on July 24, 1997. Compl. ¶ 28. Plaintiff Kafia Ismail is a Kurdish woman whose husband was imprisoned and tortured by the Hussein regime from 2002 until he died in December 2003. *Id.* ¶ 29. Plaintiff Batul Nur and her daughters, plaintiffs Afaf Rasool and Zahra Rasool, were repeatedly detained, interrogated, and tortured by the Saddam Hussein regime from 1990 to 2001. *Id.* ¶ 30.

Under the TVPA, "[a]n individual who, under actual or apparent authority, or color of law, of any foreign nation ... subjects an individual to torture ... or extra-judicial killing" is liable to that individual or his or her legal representative for damages. 28 U.S.C. § 1350. The plaintiffs allege that the defendants are liable under the TVPA because their participation in the former Iraqi government's illegal surcharge program indirectly enabled the Saddam Hussein regime to carry out its campaign of torture against the plaintiffs and their family members. Compl. ¶ 219.

■ After careful consideration, the Court concludes that the plaintiffs' TVPA claims must be dismissed because of various pleading deficiencies.[1] First, the complaint does not allege that the defendant corporations were acting "under the color of law." In order to satisfy this requirement, the defendants must have "act[ed] together with state officials or with significant state aid." *Khulumani v. Barclay Nat'l Bank Ltd.*, 504 F.3d 254, 260 (2d Cir.2007) (affirming dismissal of TVPA claims where plaintiffs "failed to link any defendants to state aid or the conduct of state officials"). Although the complaint alleges that "the persons who carried out the atrocities were acting under the color of law," *see* Compl. ¶ 144, nothing in the complaint suggests that the defendants were acting under the color of law. Thus, while the members of the former Iraqi government who actually committed human rights abuses acted under the color of law, there is no assertion that Chevron or BNP Paribas acted under the color of law.

■ The plaintiffs contend that the color of law requirement is satisfied because the defendants "were acting in concert" with the Saddam Hussein regime "to pro-

---

**1.** The plaintiffs in this case had previously brought a similar action against BNP Paribas and Australian Wheat Board, Ltd. Judge Lynch dismissed that case, but gave the plaintiffs leave to amend their complaint. *See Mastafa v. Australian Wheat Board Ltd.*, No. 07 Civ. 7955, 2008 WL 4378443, 2008 U.S. Dist. LEXIS 73305 (Sept. 25, 2008) (Lynch, J.). Many of the pleading deficiencies identified by Judge Lynch still exist in the current version of the complaint. Moreover, the current complaint makes various references to Australian Wheat Board Ltd., which is not a named defendant in this case.

mulgate violations of international law through the payments of bribes and kickbacks." *See* Plaintiffs' Opposition to Chevron's Motion to Dismiss Plaintiffs' Complaint at 20 (S.D.N.Y. D.I. 26). However, this conclusory assertion is not sufficient to survive a motion to dismiss under *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

■ Second, the TVPA claims must fail because the TVPA does not permit aiding-and-abetting liability. The plain language of the TVPA limits liability to those "individual[s] . . . who subject[ ] [other] individual[s] to torture." 28 U.S.C. § 1350. It does not extend liability to parties who provide aid to individuals who commit acts of torture. Since the complaint does not allege that the defendants themselves committed human rights abuses, therefore, even if the defendants provided aid to the Saddam Hussein regime, they could not be subject to liability under the TVPA.

The plaintiffs argue that even if the language of the statute does not expressly permit secondary liability, such a theory of liability should be presumed. However, the Supreme Court has adopted a default rule that is exactly opposite to the plaintiffs' suggestion. *See Central Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164, 182, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) ("[W]hen Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors.").

■ Moreover, even if aiding-and-abetting liability were permitted under the TVPA, the complaint does not adequately plead such liability given that nothing in the complaint suggests (even in a conclusory fashion) that the defendants acted with the purpose of facilitating human rights abuses. *See Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 258 (2d Cir.2009) (aiding-and-abetting liability under the ATS requires that the defendants acted "'with the purpose of facilitating the commission of that crime.'") (quoting *Khulumani v. Barclay Nat'l Bank Ltd.*, 504 F.3d 254, 277 (2d Cir.2007) (Katzmann, J., concurring)). In fact, the TVPA claims as presently pleaded even fail to meet the less stringent common law standard for aiding-and-abetting liability, which requires that the defendants had "actual knowledge" that their actions would contribute to the commission of human rights abuses. *See, e.g., Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir.2006) ("[A]ctual knowledge is required to impose liability on an aider and abettor under New York law."). While the complaint repeatedly states that the defendants "knowingly" aided and abetted in the commission of human rights abuses, these allegations are "nothing more than 'formulaic recitation[s] of the requirement'" and are thus "not sufficient to make the claim for relief 'plausible.'" *See Mastafa v. Australian Wheat Bd. Ltd.*, No. 07 Civ. 7955, 2008 WL 4378443, at *5, 2008 U.S. Dist. LEXIS 73305, at *18 (S.D.N.Y. Sept. 25, 2008) (quoting *Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955).

■ Finally, the Court must dismiss the TVPA claims because these claims cannot be brought against corporations. As the Ninth Circuit recently held in *Bowoto v. Chevron Corp.*, 621 F.3d 1116, 1126–27 (9th Cir.2010), the plain language of the TVPA only permits actions against natural

persons. Notably, the TVPA uses the word "individual" to refer to both the torturer and the victim of torture. Since corporations cannot be victims of torture, the statute necessarily refers to natural persons when it uses the word "individual" to describe the torture victim. Thus, given the "normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning," it follows that TVPA claims can only be brought against natural persons. *Id.* at 1127 (quoting *Comm'r v. Lundy*, 516 U.S. 235, 250, 116 S.Ct. 647, 133 L.Ed.2d 611 (1996)). Moreover, the fact that the Dictionary Act defines the term "person" to include "corporations . . . as well as individuals" suggests that the word "individual" only refers to natural persons and not corporations. *Id.* at 1126–27 (citing 1 U.S.C. § 1). While *Bowoto* is not binding on this Court, the Second Circuit has expressed agreement with *Bowoto* in its recent decision in *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 148–49 (2d Cir.2010), where it held that ATS claims cannot be brought against corporations. In *Kiobel*, the Second Circuit wrote that in finding that ATS claims can only be brought against natural persons, it adopts the same rule which applies to TVPA claims. *See Kiobel*, 621 F.3d at 148–49 (citing *Bowoto*, 621 F.3d 1116).

Accordingly, the Court grants the defendants' motions to dismiss. The Clerk of the Court is hereby directed to enter final judgment dismissing the complaint with prejudice, and to close the case.

SO ORDERED.