10-2992-cv
Liu Bo Shan v. China Constr. Bank Corp.

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 5th day of May, two thousand eleven.

PRESENT:  REENA RAGGI,
                       *Circuit Judge*,
              JOHN GLEESON,[*]
                       *District Judge.*[**]

-----------------------------------------------------------------
LIU BO SHAN,

                       *Plaintiff-Appellant*,


          v.                                          No. 10-2992-cv

CHINA CONSTRUCTION BANK
CORPORATION,

                       *Defendant-Appellee.*
-----------------------------------------------------------------

APPEARING FOR APPELLANT:      CHRISTIAN     LEVESQUE (Terrence P. Collingsworth, Piper Hendricks, *on the brief*), Conrad & Scherer, LLP, Washington, D.C.

---

[*] District Judge John Gleeson of the United States District Court for the Eastern District of New York, sitting by designation.

[**] Circuit Judge Guido Calabresi, who was a member of this panel, recused himself. The remaining two panel members agree on the disposition and decide this appeal pursuant to Second Circuit Internal Operating Procedure E(b).

APPEARING FOR APPELLEE: STEPHEN M. NICKELSBURG (James B. Weidner, Todd A. Spiegelman, Clifford Chance US LLP, New York, New York; Juan P. Morillo, Clifford Chance US LLP, Washington, DC, *on the brief*), Clifford Chance US LLP, Washington, D.C.

Appeal from the United States District Court for the Southern District of New York (Denise Cote, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on June 29, 2010, is AFFIRMED.

Resident alien Liu Bo Shan appeals from the Rule 12(b)(6) dismissal of claims against his former employer, defendant China Construction Bank Corporation (the "Bank"), for torture in violation of the Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350 note, and (1) torture; (2) cruel, inhumane, and degrading treatment ("cruel treatment"); and (3) prolonged arbitrary detention in China, pursuant to the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350. See Liu Bo Shan v. China Constr. Bank Corp., No. 09 Civ. 8566, 2010 WL 2595095 (S.D.N.Y. June 28, 2010). We review the challenged dismissal de novo, consistent with the pleading standards articulated in Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), and mindful that we must accept all allegations in the complaint as true and draw all reasonable inferences in Liu's favor, see Matson v. Bd. of Educ. of City Sch. Dist. of N.Y., 631 F.3d 57, 63 (2d Cir. 2011). In applying these principles, we assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

2

1.      Jurisdiction

Relying on this court's recent decision in Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111 (2d Cir. 2010), pet. for reh'g en banc denied, 2011 WL 338151 (2d Cir. Feb. 4, 2011), the Bank argues that the district court lacked subject matter jurisdiction to hear an ATS claim against a corporate defendant for violations of customary international law, see id. at 145 ("Because corporate liability is not recognized as a specific, universal, and obligatory norm, it is not a rule of customary international law that we may apply under the ATS." (internal citation and quotation marks omitted)).  To the extent Liu submits that Kiobel was wrongly decided, we are not free to consider that argument.  See NML Capital v. Republic of Argentina, 621 F.3d 230, 243 (2d Cir. 2010) ("[I]t is axiomatic that a panel of this court is bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of our Court or by the Supreme Court." (internal quotation marks omitted)).  Liu further argues that Kiobel does not apply here because this court expressly limited its use of the term "corporation" and its holding to "private juridical entities," Kiobel v. Royal Dutch Petroleum Co., 621 F.3d at 120 n.19, and the Bank was state-owned at the time of his injuries.  We do not address this argument because even if jurisdiction exists, the amended complaint was correctly dismissed for failure to state a claim.  See, e.g., Conyers v. Rossides, 558 F.3d 137, 150 (2d Cir. 2009) (exercising "hypothetical jurisdiction" where jurisdictional question is statutory, not constitutional).[1]

_____

[1] For the same reason, we do not address the Bank's contention that if it is considered an instrumentality of the Chinese government, then it is immune from suit under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602-11.  See 28 U.S.C. § 1603(a)

3

2.    Failure to State a Claim

To state a claim under the ATS, a plaintiff must (a) be an alien (b) claiming damages for a tort only, (c) resulting from a violation of the "law of nations," i.e., customary international law, or of a treaty of the United States. Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 255 (2d Cir. 2009) (citing 28 U.S.C. § 1350).[2]  The scope of liability for ATS violations is derived from international law. See id. at 258; accord Sosa v. Alvarez-Machain, 542 U.S. 692, 732 n.20 (2004); Kiobel v. Royal Dutch Petroleum Co., 621 F.3d at 126. Liu submits that the district court erred in concluding that the amended complaint failed to state a claim against the Bank for the alleged violations of customary

_____

(defining "foreign state" to include, inter alia, "an agency or instrumentality of a foreign state"); Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 443 (1989) (holding that FSIA provides sole basis for obtaining jurisdiction over a foreign state and that none of the FSIA's enumerated exceptions applied to extraterritorial tort claims under the ATS); Flores v. S. Peru Copper Corp., 414 F.3d 233, 246 (2d Cir. 2003) (observing that the "[FSIA] bars most suits against foreign sovereigns, including those brought under the [ATS]").  Nor do we address the Bank's argument that the ATS does not apply extraterritorially.  See Kiobel v. Royal Dutch Petroleum Co., 621 F.3d at 117 n.10 (characterizing question of whether the ATS applies extraterritorially as "lurking" in our ATS precedents).

[2] Liu asserts a claim for torture under both the ATS, i.e., as a violation of customary international law, and the TVPA, which provides a cause of action for damages against any "individual who, under actual or apparent authority, or color of law, of any foreign nation . . . subjects an individual to torture."  28 U.S.C. § 1350 note (a)(1); see Arar v. Ashcroft, 585 F.3d 559, 567 (2d Cir. 2009) (en banc).  Although the requirements for stating a torture claim under the ATS and TVPA might differ in some respects, see Flores v. S. Peru Copper Corp., 414 F.3d at 247 & n.21, the district court did not articulate different standards for application of the two statutes, and neither party has argued on appeal that it should have.  Accordingly, any such arguments have been waived.  See In re Wireless Data, Inc., 547 F.3d 484, 492 (2d Cir. 2008).  Thus, our reasons for concluding that Liu fails to state a claim for torture under the ATS compel the same result with respect to the TVPA claim.

4

international law on any of three theories:  direct liability, aiding and abetting, or conspiracy.

a.　Direct Liability

Liu does not quarrel with the district court's determination that to establish direct liability under international law, the Bank must have "participated, physically or otherwise directly, in the material elements of a crime whether [individually] or jointly with others" or "planned, instigated, ordered, solicited, or induced" the alleged violations.  Liu Bo Shan v. China Constr. Bank Corp., 2010 WL 2595095, at *4 (citations and internal quotation marks omitted); see, e.g., Kadic v. Karadzic, 70 F.3d 232, 242  (2d Cir. 1996); Filartiga v. Pena-Irala, 630 F.2d 876, 878, 883-84 (2d Cir. 1980).  Rather, Liu contends that the Bank's direct liability was adequately pleaded by allegations that (1) the Bank called the police to arrest Liu, see Am. Compl. ¶ 12; (2) the Bank manufactured false evidence to induce Liu's arrest, see id. ¶ 14; and (3) while torturing Liu, the police said that he should not have released his audit, which purportedly uncovered wrongdoing at the Bank, see id. ¶ 28.  Like the district court, we conclude that these allegations are insufficient to support a reasonable inference of direct liability by the Bank for conduct – torture, cruel treatment, and prolonged arbitrary detention – that the amended complaint repeatedly asserts was "committed by the Chinese government police," not the Bank, id. ¶¶ 34, 38, 44, 48; see also id. ¶ 26 (stating that it was "the police who physically injured [Liu]"), only after Liu came into police custody, see Ashcroft v. Iqbal, 129 S. Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (emphasis added)).  Liu's urged inference,

5

i.e., that the Bank directed the Chinese police to abuse him, lacks any support in the pleading. Such an inference is not reasonably supported by allegations that the Bank falsified evidence or that the Chinese police knew about the audit. At most, these allegations suggest that the Bank procured Liu's arrest on false charges in retaliation for his release of the audit. Even if true, such an inference does not support a plausible claim that the Bank is directly liable for the alleged violations.[3]

Liu nevertheless contends that, because the Bank and the police "both operated as arms of the Government of China" at the time of his mistreatment, Appellant's Br. 27, the Bank may be held directly liable for police violations of customary international law. We are not persuaded. "[G]overnment instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such." First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611, 626-27 (1983) ("Bancec"). While this presumption of separateness can be overcome where (1) the corporate entity is "so extensively controlled by its owner that a relationship of principal and agent is created," or (2) "recognizing the instrumentality's separate status would work fraud or injustice," EM Ltd. v. Republic of Argentina, 473 F.3d 463, 477 (2d Cir. 2007) (internal quotation marks omitted), Liu fails to allege sufficient facts to demonstrate that the Bank is the "alter ego" of the Chinese government or that disregarding the Bank's separate juridical status is "necessary

---

[3] Even if these allegations might support a claim against the Bank for false arrest or malicious prosecution, Liu does not contend that such torts are cognizable under customary international law. Cf. Sosa v. Alvarez-Machain, 542 U.S. at 738 (holding "single illegal detention of less than a day, followed by the transfer of custody to lawful authorities and a prompt arraignment," not actionable under the ATS).

6

to avoid fraud or injustice," id. at 480; see also Letelier v. Republic of Chile, 748 F.2d 790, 794 (2d Cir. 1984) ("Joint participation in a tort is not the 'classic' abuse of corporate form to which the Supreme Court referred [in Bancec].").  Indeed, to conclude otherwise would mean that the Bank could be held liable for any violations of customary international law perpetrated by the Chinese government or its instrumentalities.

Relying on the "state action" principle in 42 U.S.C. § 1983 jurisprudence, Liu argues that the Bank may be held directly liable for the alleged violations of customary international law because it acted jointly with the Chinese police.  See Abdullahi v. Pfizer, Inc., 562 F.3d 163, 188 (2d Cir. 2009) ("A private individual will be held liable under the ATS if he 'acted in concert with' the state, i.e., 'under color of law.'" (quoting Kadic v. Karadzic, 70 F.3d at 245)).  In the absence of any factual allegation demonstrating personal participation or willful direction, however, the mere assertion that the Bank acted "jointly" with the Chinese police is insufficient to establish direct liability for the alleged abuses.  See Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d at 257 (construing allegation that defendant was "complicit in Government's abuses," but not "personally engaged in human rights abuses," as aiding and abetting claim (emphasis added)); Khulumani v. Barclay Nat'l Bank Ltd., 504 F.3d 254, 283 (2d Cir. 2007) (Katzmann, J., concurring) (concluding it was "not relevant whether the plaintiffs sufficiently allege[d] that the defendants acted under color of law in the commission of genocide as long as they sufficiently alleged that the defendants

7

committed genocide").[4]  Accordingly, we conclude that Liu failed to state a claim against the Bank on a theory of direct liability under international law.

      b.      <u>Accessorial Liability</u>

Liu submits that the amended complaint nevertheless adequately alleges the Bank's liability as an accessory to the Chinese police's violations of customary international law on theories of aiding and abetting and conspiracy.[5]  To state a claim for aiding and abetting under international law, a plaintiff must allege that defendant (1) provided "substantial assistance" to the perpetrator; and (2) acted with the "purpose" of facilitating the alleged offenses, rather than with mere knowledge.  <u>Presbyterian Church of Sudan v. Talisman Energy, Inc.</u>, 582 F.3d at 247; <u>see also</u> <u>Khulumani v. Barclay Nat'l Bank Ltd.</u>, 504 F.3d at 277 (Katzmann, J., concurring).  A conspiracy claim requires the same proof of <u>mens rea</u> as an aiding and abetting claim.  <u>See</u> <u>Presbyterian Church of Sudan v. Talisman Energy, Inc.</u>, 582 F.3d at 260.[6]

---

[4] In this regard, Liu's reliance on § 1983 malicious prosecution cases is misplaced. A private individual who deliberately falsifies evidence to induce another's prosecution may be held liable for malicious prosecution not merely because he acted jointly with a state actor, but rather because the knowing provision of false evidence satisfies an essential element of the tort, <u>i.e.</u>, the "initiation" of a prosecution.  <u>See, e.g.</u>, <u>Rohman v. N.Y.C. Transit Auth.</u>, 215 F.3d 208, 217 (2d Cir. 2000).  By contrast, the Bank's alleged provision of false evidence to the Chinese police to induce Liu's arrest does not satisfy the <u>actus reus</u> necessary to establish direct liability for violations of international law.

[5] As Liu acknowledges in the amended complaint, if the Bank were part of a unitary government of China, it "could not conspire with or aid and abet" the Chinese police.  Am. Comp. ¶ 13.  For purposes of assessing Liu's accessorial liability theory, therefore, we assume that the Bank and Chinese police are distinct entities.

[6] The only inchoate conspiracy crimes recognized under customary international law are (1) conspiracy to commit genocide and (2) common plan to wage aggressive war.  <u>See</u>

Notwithstanding Liu's assertions that the Chinese government exercised a "high degree of control" over the Bank and "shared the goal of silencing Liu," Appellant's Br. 39, the amended complaint fails plausibly to allege that the Bank acted with the purpose that Liu be subjected to torture, cruel treatment, or prolonged arbitrary detention by the police. At most, the amended complaint alleges that the Bank falsified evidence and induced the police to arrest Liu in retaliation for his release of the audit, <u>knowing</u> that the police would subject him to mistreatment. <u>See, e.g.</u>, Am. Compl. ¶ 13 ("Despite this <u>knowledge</u> of certain mistreatment, the Bank proceeded in having [Liu] arrested on false charges <u>for the purpose</u> of preventing him from exposing illegal activities at the Bank." (emphasis added)); <u>see also</u> <u>id.</u> ("[T]he Bank <u>knew or was substantially certain</u> that by contacting the police that [Liu] would be tortured and otherwise subjected to cruel and degrading treatment." (emphasis added)). Although "intent must often be demonstrated by the circumstances," <u>Presbyterian Church of Sudan v. Talisman Energy, Inc.</u>, 582 F.3d at 264, Liu's allegations do not support a reasonable inference that the Bank acted with the purpose to advance violations of customary international law, <u>see</u> <u>id.</u> at 263 (holding "complicity" in human rights violations insufficient absent evidence that defendant "acted with the purpose to assist the Government's violations"). Liu's reliance on <u>Chowdhury v. Worldtel Bangladesh Holding Ltd.</u>, No. 08 Civ. 1659 (E.D.N.Y. Sept. 16, 2009), is misplaced. There, a district court

---

<u>Presbyterian Church of Sudan v. Talisman Energy, Inc.</u>, 582 F.3d at 260 (citing <u>Hamdan v. Rumsfeld</u>, 548 U.S. 557, 610 (2006)). Assuming, without deciding, that Liu might assert a claim under the ATS for conspiracy as a completed offense, or its analog under international law, joint criminal enterprise, <u>see</u> <u>id.</u>, we conclude that the complaint fails to state such a claim against the Bank.

9

refused to disturb a jury verdict finding a defendant liable for torture inflicted by police where trial evidence showed not only that defendant "contacted the [police] for the express purpose of having it take action against plaintiff," "attended the torture," and "said he could stop the torture" if plaintiff met his demands, but that the "torturers made it clear they were acting at the behest of defendant." Mem. Decision & Order at 1, ECF No. 52, Chowdhury v. Worldtel Bangladesh Holding Ltd., No. 08 Civ. 1659 (E.D.N.Y. Sept. 16, 2009). Liu's allegations demonstrate no comparable conduct manifesting the Bank's purpose to subject him to the alleged human rights violations.

The aiding and abetting claim fails for the independent reason that allegations that the Bank contacted the police and provided false evidence to induce Liu's arrest do not constitute "substantial assistance" to the police in perpetrating the alleged torture, cruel treatment, or prolonged arbitrary detention. In urging otherwise, Liu submits that the false evidence provided by the Bank "created a veneer of legitimacy to justify the police's arrest and detention of Liu" and that the Bank's purported communication with the police about the audit constituted "encouragement and support for the violent acts that otherwise would never have occurred." Appellant's Br. 47. To the extent Liu argues that "but for" causation or allegations of "encouragement and support" suffice, such an argument is foreclosed by the requirement that, to be actionable, assistance must be both "practical" and have "a substantial effect on the perpetration of the crime," which is not this case. Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d at 258; cf. Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57, 62-63 (2d Cir. 1985) (holding in securities fraud context that

10

"[a]llegations of a 'but for' causal relationship are insufficient" to establish substantial assistance).

Liu's reliance on In re South African Apartheid Litigation, 617 F. Supp. 2d. 228 (S.D.N.Y. 2009), a pre-Talisman case, is unavailing. In that case, plaintiffs alleged that certain defendants "provided information about anti-apartheid activists to the South African Security Forces, facilitated arrests, provided information to be used by interrogators, and even participated in interrogations" as part of a systematic campaign to identify and torture anti-apartheid leaders. Id. at 264. Even assuming such allegations would qualify as "substantial assistance" under Talisman, they are qualitatively different from the alleged support in this case: that the Bank contacted the police and provided false evidence. Similarly, Liu's reliance on two cases in which plaintiffs alleged that a foreign bank knowingly sustained a suicide bombing campaign by (1) maintaining accounts for terrorist organizations and (2) administering the provision of financial benefits to families of bombers, see Lev v. Arab Bank, PLC, No. 08 Civ. 3251, 2010 WL 623636 (E.D.N.Y. Jan. 29, 2010); Almog v. Arab Bank, PLC, 417 F. Supp. 2d 257 (E.D.N.Y. 2002), only serves to highlight the shortcomings of Liu's thin allegations of assistance here.

Because we conclude that Liu fails to state a claim against the Bank for the alleged violations of customary international law under either a direct or accessorial theory of liability, we do not address the Bank's arguments (1) that the claims are time-barred; (2) that cruel treatment and prolonged arbitrary detention are not actionable under the ATS; or (3) that a TVPA claim may only be brought against a natural person, not a corporation.

11

3.     Conclusion

We have considered Liu's remaining arguments and conclude that they are without merit. For the foregoing reasons, the district court's judgment is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court