REINHARDT, Circuit Judge,
concurring:
I concur fully in the results of the majority opinion but disagree with a limited part of its reasoning, contained in Parts II.C and IV.B.3, regarding aiding and abetting.[1] I would look to domestic rather than international law in analyzing this issue. I also join Part II of Judge McKeown’s opinion, which clarifies that domestic law predominantly governs the issue of corporate liability.
The applicability of domestic law to resolve questions under the ATS is hardly a novel matter. International law “takes no position on whether its norms may be enforced by civil actions for compensatory damages,” leaving that question “to be separately decided by each nation.” Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111, 153 (2d Cir.2010) (Leval, J., concurring in the judgment); see also Doe v. Exxon Mobil Corp., 654 F.3d 11, 51-52 (D.C.Cir.2011); Kadic v. Karadzic, 70 F.3d 232, 246 (2d Cir.1995) (“The law of nations ... leaves to each nation the task of defining the remedies that are available for international law violations.”); Tel-Oren v. Libyan Arab Republic, 726 F.2d 774, 778 (D.C.Cir.1984) (Edwards, J., concurring) (“[T]he law of nations never has been perceived to create or define the civil actions to be made available by each member of the community of nations.”). Domestic law therefore governs how international norms are enforced under the ATS.
I. Aiding and Abetting
I continue to adhere to the view that in determining the scope of third-party tort liability under the ATS, we are required to “look to traditional civil tort principles embodied in federal common law, rather than to evolving standards of international law.” Doe v. Unocal Corp., 395 F.3d 932, 965 (9th Cir.2002) (Reinhardt, J., concurring), vacated, 395 F.3d 978 (9th Cir.2003). Both the majority and Judge Pregerson err in looking to the decisions of ad hoc criminal tribunals (such as the ICTY and ICTR) and to the Rome Statute of the International Criminal Court, rather than to established doctrines of our own tort law.
I agree, instead, with the reasoning of Judge Hall’s concurring opinion in Khulumani v. Barclay Nat. Bank Ltd., 504 F.3d 254 (2d Cir.2007). As Judge Hall writes, “Sosa at best lends Delphian guidance on *771 the question of whether the federal common law or customary international law represents the proper source from which to derive a standard of aiding and abetting liability under the [ATS].” Id. at 286 (Hall, J., concurring). The appropriate resolution is to rely on our own law.
Like Judge Hall, I would apply the federal common law aiding and abetting standard of Halberstam v. Welch, 705 F.2d 472 (D.C.Cir.1983), which relied on Restatement (Second) of Torts § 876(b); see also Sarei v. Rio Tinto, PLC, 487 F.3d 1193, 1202 (9th Cir.2007), vacated, 499 F.3d 923 (9th Cir.2007) (citing Restatement §§ 876-77 as among “well-settled theories of vicarious liability under federal common law”).[2] This standard provides that for a defendant to incur liability, “(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.” Halberstam, 705 F.2d at 477.
Plaintiffs have adequately alleged Rio Tinto’s liability under this standard. For this reason, I agree with the majority’s decision to reverse the district court’s dismissal of the war crimes claim.
II. Corporate Liability
For similar reasons, I would look to domestic law to determine whether a corporation may be held liable under the ATS for its violation of the law of nations. I join Part II of Judge McKeown’s opinion, which ably explains why corporations cannot be immune from liability for genocide or war crimes. I therefore concur in the majority’s holding that corporations may be held liable under the ATS. Domestic law abides no distinction between corporate and individual tort liability, see, e.g., The Philadelphia, Wilmington, and Baltimore R.R. Co. v. Quigley, 62 U.S. 202, 210, 21 How. 202, 16 L.Ed. 73 (1858), and this rule is just as clear in the ATS context as in any other.
III. Conclusion
The ATS is a jurisdictional statute, enabling the federal courts to hear claims for a handful of torts with “definite content and acceptance among civilized nations.” Sosa v. Alvarez-Machain, 542 U.S. 692, 732, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004). The role of international law is to specify these torts. The role of domestic law is to prescribe the means of their enforcement. I therefore disagree with the majority to the extent that it relies on international law in deciding the question of aiding and abetting, and I would place a more explicit emphasis on domestic law in the resolution of the corporate liability issue. I concur fully, however, in the result.

. I also disagree with some of the reasoning in Part IV.C, concerning crimes against humanity.

. As the Unocal majority noted, the Restatement standard is "similar” to the international-law aiding and abetting standard applied in that case. 395 F.3d at 951, vacated, 395 F.3d 978; see also Exxon Mobil, 654 F.3d at 38-39. My disagreement with the aiding and abetting theory in Unocal arose from the majority’s decision to derive that theory from international law. While my Unocal opinion argued for the application of agency, joint venture, or reckless disregard as theories of third-parly liability that are well-established in federal common law, I have no objection to any other theory of third-party liability derived from federal common law—only those that arise from "evolving standards of international law, such as” the pronouncements of an “ad hoc international criminal tribunal.” 395 F.3d at 965 (Reinhardt, J., concurring).